UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES HARKER, | Case No. 1:23-CV-07865-VSB |
| Plaintiff, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL, LLC, doing business as "M SS NG P ECES," and BBDO WORLDWIDE, INC. | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT SOMETHING IDEAL, LLC, D/B/A M SS NG P ECES' MOTION TO DISMISS PLAINTIFF JAMES HARKER'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

VENABLE LLP
Jessie F. Beeber
Nicholas M. Reiter
151 West 42nd Street, 49th Floor
New York, New York 10036
212.370.6296
jfbeeber@venable.com
nmreiter@venable.com

*Attorneys for Defendant Something Ideal d/b/a "M ss ng P eces"*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ i

I.    PRELIMINARY STATEMENT ......................................................................................... 1

II.   FACTUAL BACKGROUND ............................................................................................. 3

    A.   The DTL Program ................................................................................................... 3

    B.   Plaintiff's Substantial Commercial Production Experience .................................... 3

    C.   Something Ideal's Employment of Plaintiff ........................................................... 4

    D.   Something Ideal's Hiring of the DTL Program Gaffer for the Commercial .......... 4

    E.   Plaintiff's "Questions" About Something Ideal's Hiring Practices ........................ 5

    F.   Plaintiff's Claims in the Complaint ........................................................................ 5

III.  LEGAL STANDARDS ...................................................................................................... 5

IV.   ARGUMENT ...................................................................................................................... 6

    A.   The Failure to Hire Claims Fail Because Plaintiff Does Not Allege He
       Applied for a Gaffer Position ................................................................................. 7

    B.   The Failure to Hire Claims Separately Fail Because Plaintiff's Allegations
       Establish That He Was Not Qualified for the DTL Program Gaffer
       Position ................................................................................................................... 9

    C.   The Retaliatory Failure to Re-Hire Claims Fail Because Plaintiff Does Not
       Allege He Engaged in a Protected Activity .......................................................... 10

    D.   The Retaliatory Failure To Re-Hire Claims Separately Fail Because
       Plaintiff Does Not Allege That He Applied for a Position with Something
       Ideal *After* He Asked Questions About the DTL Program ................................. 12

    E.   The Section 1985(3) Claim Fails Because it is Duplicative of Plaintiff's
       Title VII Claims ................................................................................................... 13

    F.   The Claims in the Complaint Fail for Lack of Subject Matter Jurisdiction .......... 13

    G.   Leave to Replead Should Be Denied .................................................................... 14

VI.   CONCLUSION ................................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011)............................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................6

*Belton v. Borg & Ide Imaging, P.C.*,
    512 F. Supp. 3d 433 (W.D.N.Y. 2021) .......................................................................11

*Brown v. Coach Stores, Inc.*,
    163 F.3d 706 (2d Cir. 1998)..........................................................................................8

*Chen v. Bowes*,
    No. 98-CV-2478(EBB), 2000 WL 1849762 (D. Conn. Nov. 22, 2000)......................12

*Chojar v. Levitt*,
    773 F. Supp. 645 (S.D.N.Y. 1991)................................................................................8

*Gad-Tadros v. Bessemer Venture Partners*,
    326 F. Supp. 2d 417 (E.D.N.Y. 2004) ..........................................................................7

*Giscombe v. New York City Dep't of Educ.*,
    39 F. Supp. 3d 396 (S.D.N.Y.2014)............................................................................11

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
    442 U.S. 366 (1979)..................................................................................................2, 13

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009)..........................................................................................6

*Howley v. Town of Stratford*,
    217 F.3d 141 (2d Cir. 2000)..........................................................................................8

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018).......................................................................7, 9

*Lawrence v. Thomas Learning, Inc.*,
    No. 1:05-CV-329 (RFT), 2007 WL 1593270 (N.D.N.Y. Jun. 1, 2007) ....................11

*McCullough v. John T. Mather Hosp. of Port Jefferson, New York, Inc.*,
No. 16-CV-4968 (DRH)(SIL), 2019 WL 1755436 (E.D.N.Y. Apr. 19, 2019) .....................11

*O'Brien v. City of New York, Dep't of Educ.*,
___ F. Supp. 3d ___, No. 22-CV-3117 (KAM)(LB), 2023 WL 5200476
(E.D.N.Y. Aug. 14, 2023) ...........................................................................................11

*Paupaw-Myrie v. Mount Vernon City Sch. Dist.*,
No. 21-CV-11237 (CS), 2023 WL 1109702 (S.D.N.Y. Jan. 30, 2022)..................................10

*Peddy v. L'Oréal USA, Inc.*,
No. 18-CV-7499 (RA), 2020 WL 4003587 (S.D.N.Y. Jul. 15, 2020)....................................11

*Ruffolo v. Oppenheimer & Co.*,
987 F.2d 129 (2d Cir. 1993) (per curiam)................................................................14

*Singh v. Excel Sec. Corp.*,
No. 14 Civ. 10111 (PAC), 2021 WL 1199469 (S.D.N.Y. Mar. 30, 2021) ............................13

*Tardd v. Brookhaven Nat. Laboratory*,
407 F. Supp. 2d 404 (E.D.N.Y. 2006) ....................................................................13

*Taylor v. City of New York*,
207 F. Supp. 3d 293 (S.D.N.Y. 2016).................................................................7, 10

*Torre v. Charter Communs., Inc.*,
493 F. Supp. 3d 276 (S.D.N.Y. 2020)......................................................................10

*Underwood v. Coinbase Glob, Inc.*
___ F. Supp. 3d ___, 2023 WL 1431965 (S.D.N.Y. Feb. 1, 2023) ....................................15

*Woods v. Empire Health Choice, Inc.*,
574 F.3d 92 (2d Cir. 2009).....................................................................................6

*Zoulas v. N.Y.C. Dep't of Educ.*,
400 F. Supp. 3d 25 (S.D.N.Y. 2019).......................................................................10

**Statutes**

42 U.S.C. § 1981...................................................................................5, 7, 9, 10

42 U.S.C. § 1985(3) ....................................................................................2, 5, 13

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...................................................................1, 8

Federal Rule of Civil Procedure 12(b)(1) .................................................................1, 2, 5

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Something Ideal, LLC d/b/a "M ss ng P eces" ("Something Ideal") respectfully submits this memorandum of law in support of its motion to dismiss the claims against Something Ideal in the Complaint.

## I.  <u>PRELIMINARY STATEMENT</u>

This is an employment dispute.  Plaintiff James Harker ("Plaintiff") previously worked for Something Ideal as a "Best Boy" electrician."  Compl. ¶ 41.  He now complains that Something Ideal did not offer him a "gaffer" position, allegedly because of his race (white) and in retaliation for his purported (but undisclosed) questions about Something Ideal's hiring practices.  *Id*. ¶ 40. Even if all of the well-pleaded allegations in the Complaint are accepted as true, Plaintiff's claims against Something Ideal fail as a matter of law for the following reasons:

*First*, Plaintiff does not allege that he applied for either of the two gaffer positions at Something Ideal.  It is well established that a plaintiff seeking damages for failure to hire must allege that he applied for the position at issue.  Because that critical fact is omitted from the Complaint, the failure to hire claim fails.

*Second*, Plaintiff's allegations, if true, establish that he was not qualified for the gaffer position about which he complains.  According to Plaintiff, the position was reserved for "a candidate who has not previously had access" to the commercial production industry so that the candidate may "learn the nuances around commercial production in a real, hands on way."  *Id*. ¶ 30.  By his own account, Plaintiff is not that type of candidate.  He claims, among other things, that he has more than 27 years of experience "as an electrician on major commercial, feature film, and television productions."  *Id*. ¶ 34.  He therefore concedes that he was not qualified for the gaffer position irrespective of his race because, according to him, the position was intended for

someone who did not previously have "access" to the commercial production industry.  *Id*. ¶¶ 34-36.

*Third*, Plaintiff does not allege that he engaged in a protected activity in support of his retaliatory failure to re-hire claim.  The best he can offer are vague references to unidentified "questions" he allegedly asked his supervisor at Something Ideal.  *Id*. ¶ 46.  The Complaint omits any meaningful description of the substance of these so-called questions, when the questions were posed, or how the questions could somehow constitute a protected activity for purposes of a retaliation claim.  He needs to allege more to plead a protected activity.  He has not.

*Fourth*, similar to the failure to hire claim, Plaintiff has not alleged that he applied for any positions at Something Ideal after he allegedly asked his supervisor the unidentified "questions" about Something Ideal's hiring practices.  Plaintiff's failure to apply for a subsequent position at Something Ideal also requires dismissal of the failure to *re*-hire claim.  If he never applied for a position after his first job ended, then Something Ideal could not have failed to re-hire him as retaliation for his prior "questions."

*Fifth*, Plaintiff's 42 U.S.C. § 1985(3) ("Section 1985(3)") claim fails because it is nothing more than a dressed up race discrimination claim seeking damages under Title VII of the Civil Rights Act of 1964 ("Title VII").  Section 1985(3) "may not be invoked to redress violations of Title VII." *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979).  Therefore, Plaintiff's Section 1985(3) claim must also be dismissed.

*Sixth*, Plaintiff does not have standing to sue Something Ideal on any basis.  The Complaint establishes that he has not suffered an injury in fact.  As a result, each of the claims must still be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

## II. <u>FACTUAL BACKGROUND</u>[1]

### A. The DTL Program

Something Ideal is a commercial production company.  Compl. ¶ 56.  It participates in a program called Double the Line ("DTL").  *Id*. ¶ 58.  Plaintiff alleges that Defendant Association of Independent Producers ("AICP") created the DTL Program to "increase diversity" among commercial production crew members.  *Id.* ¶¶ 21, 24.  According to Plaintiff, pursuant to the DTL Program, a commercial production company and/or its client will "double the line" within the production's budget for a specific position so that a second person may "work alongside" the first person "in a paid capacity," thereby gaining access to the commercial production industry. *Id.* ¶ 22; *see also id.* ¶¶ 26, 28.  Accordingly, instead of hiring one camera operator, casting director, costume designer, etc., a DTL Program participant will hire two individuals in each role, one of whom is a Black, Indigenous, or Person of Color ("BIPOC") "to work alongside" the other individual in the same role.  *Id*.

Plaintiff alleges that the purpose of the DTL Program is to hire "a candidate who has not previously had access" to the commercial production business, but is qualified in the role, such that the candidate will "have access to the production to learn the nuances around commercial production in a real, hands on way."  *Id*. ¶ 30.  He further alleges that the "goal" of the DTL Program "is for the companies to invest in the building of careers and apprenticeship training over a period of several jobs to ensure the needed experience is received." *Id*. ¶ 57.

### B. Plaintiff's Substantial Commercial Production Experience

Plaintiff is a highly experienced electrician in the commercial production industry.  He admits he has over 27 years of experience working as an electrician on major commercial, feature

---

[1] Something Ideal accepts as true all well-pleaded allegations in the Complaint for purposes of its motion to dismiss only.  Something Ideal reserves the right to deny any allegation in the Complaint, if necessary.

film, and television productions.  *Id.* ¶¶ 5, 34.  The majority of his work experience is as a gaffer, best boy, or electrician.  *Id.* ¶ 35.  He alleges a long list of his job qualifications, including his experience "understanding protocols, work practices, and electrical equipment as essential to maintaining the safety of the set because they are dealing with high voltage cables, sophisticated equipment unique to the industry, and complicated equipment rigging techniques . . . ."  *Id.* ¶ 36.

## C.  Something Ideal's Employment of Plaintiff

Plaintiff's claims arise from the alleged hiring practices for a commercial production project for Defendant Meta Platforms, Inc. ("Meta") on December 14, 2022 (the "Commercial"). Plaintiff alleges that Something Ideal was the production company for the Commercial.  *Id.* ¶ 56. He also alleges that Something Ideal and the other Defendants implemented the DTL Program when hiring staff for the Commercial.  *Id.* ¶ 62.

Two days before the Commercial production, on December 12, 2022, the Commercial's production supervisor offered Plaintiff a position as "Best Boy."  *Id.* ¶ 39.  Plaintiff accepted the offer.  *Id.* ¶ 41.  The Best Boy is the second most senior electrician on the set with "supervisory duties over the other electricians."  *Id.* ¶ 35.  The Best Boy "reports to the gaffer," who is "the most senior or highest-level electrician on a production."  *Id.*  Plaintiff complains that he "was not offered any gaffer positions" for the Commercial.  *Id.* ¶ 40.  He fails to allege, however, that he applied for any Gaffer positions in the first place.  *See generally* Compl. ¶¶ 39-53.

## D.  Something Ideal's Hiring of the DTL Program Gaffer for the Commercial

Plaintiff alleges that Something Ideal hired two gaffers for the Commercial, one of whom he claims was hired pursuant to the DTL Program.  *Id.* ¶¶ 43, 49-50.  According to Plaintiff, the DTL Program gaffer hired for the Commercial "did not have any experience as a gaffer" and "had virtually no experience as an electrician and limited knowledge of the electrical equipment and

work practices on set." *Id.* ¶¶ 44, 47.  To illustrate these allegations, Plaintiff asserts that the DTL Program gaffer hired for the Commercial "was unable to even properly coil an electric extension cord, which is among the most basic skills of any motion picture electrician." *Id.* ¶ 48.

### E.  Plaintiff's "Questions" About Something Ideal's Hiring Practices

Plaintiff alleges he asked undisclosed "questions" to the DTL Program gaffer and his production supervisor for the Commercial.  *Id.* ¶ 46.  He does not specifically allege what those questions were.  *Id.*  Nor does he specifically allege that he complained about or opposed supposedly unlawful discrimination by asking his undisclosed "questions."  The only specific question alleged in the Complaint is that he asked the production supervisor "what the DTL designation meant" on the "Call Sheet" for the Commercial.  *Id.* ¶ 49.  Nothing more.

### F.  Plaintiff's Claims in the Complaint

On September 5, 2023, Plaintiff filed the Complaint in this action, alleging claims for race discrimination in the making and enforcement of contracts under 42 U.S.C. § 1981 ("Section 1981") (Count I); conspiracy to violate his civil rights under 42 U.S.C. § 1985(3) ("Section 1985(3)") (Count II); employment discrimination and retaliation under Title VII (Counts III and IV); and violations of the New York State Human Rights Law ("NYSHRL") (Count V).

## III.  <u>LEGAL STANDARDS</u>

In order to defeat a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), a plaintiff must "allege facts that affirmatively and plausibly suggest that [he has] standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).  To establish standing to sue, "a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be

redressed by a favorable decision." *Woods v. Empire Health Choice, Inc.,* 574 F.3d 92, 96 (2d Cir. 2009) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To defeat the motion, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The facts alleged in the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim that is merely conceivable does not meet the plausibility standard. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Whether a complaint meets the plausibility threshold is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## IV. <u>ARGUMENT</u>

Plaintiff does not state any viable claims against Something Ideal. His pleading deficiencies are at least three-fold: (1) he fails to allege he applied for a gaffer position prior to accepting the "Best Boy" role; (2) he admits, based on his allegations, that he was not qualified for the DTL Program gaffer position, regardless of his race; (3) he fails to allege he engaged in a protected activity in support of his retaliation claims; and (4) he fails to allege that he applied for

6

any position at Something Ideal after his purported protected activity.  These pleading failures establish that Plaintiff cannot allege the required elements for each of his claims, and that he lacks standing to sue.  His claims should be dismissed.

### A. The Failure to Hire Claims Fail Because Plaintiff Does Not Allege He Applied for a Gaffer Position

Plaintiff's failure to allege he applied for a gaffer position is fatal to his failure to hire claims, whether asserted under Title VII, Section 1981, or the NYSHRL.  In order to plead a failure to hire claim under each statute, "a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected despite being qualified; and (4) after this rejection, the position remained open and the employer continued to seek applicants with plaintiff's qualifications." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 445 (S.D.N.Y. 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *see also Taylor v. City of New York,* 207 F. Supp. 3d 293, 303 (S.D.N.Y. 2016) (noting that same pleading standard applies for Title VII, NYSHRL, and Section 1981 failure to hire claims); *Gad-Tadros v. Bessemer Venture Partners*, 326 F. Supp. 2d 417, 424 (E.D.N.Y. 2004) (holding that courts evaluate Section 1981 and Title VII discrimination claims under the same standards).

Here, Plaintiff fails to satisfy the second and third elements above.  He alleges that Something Ideal offered him a "Best Boy Electrician" position, and he complains that "[h]e was not offered any gaffer positions."  Compl. ¶¶ 39-40.  But nowhere in the Complaint does Plaintiff allege that he applied for *any* gaffer position – whether the position was affiliated with the DTL Program or not.  Further, Something Ideal necessarily could not have rejected Plaintiff for a gaffer position – the third element – if he did not apply.

The application and rejection requirements for failure to hire claims are well-established. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706 (2d Cir. 1998). In *Brown*, the Second Circuit affirmed the dismissal of a failure to promote claim[2] because the plaintiff failed to allege that she applied and was rejected for a specific position at the defendant. *Id*. at 712. According to *Brown*, a plaintiff must "allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Id*. at 710 (citing *McDonnel Douglas*, 411 U.S. at 802; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, n.6 (1981)). Notably, *Brown* affirmed the granting of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), *not* a motion for summary judgment.

The same reasoning in *Brown* supports dismissal of the failure to hire claims in this case. Plaintiff has not alleged that he applied for either the non-DTL or DTL gaffer positions referenced in the Complaint. Nor does Plaintiff allege that applying for either of the gaffer positions would have been futile.[3] In any case, Plaintiff cannot rely on alleged futility if he never applied for the gaffer position that was unaffiliated with the DTL Program. The most Plaintiff alleges is that Something Ideal offered him a "Best Boy Electrician" position and that "he was not *considered* for any of the relevant positions designated as 'DTL' on the December 14, 2022, Call Sheet." Compl. ¶¶ 40, 52 (emphasis added). Even if these allegations are presumed true, they are not enough to stave off dismissal. A candidate not being "considered" (which is alleged) is different than a candidate applying and being rejected (which is not alleged). Plaintiff has not alleged –

---

[2] It is of no moment that *Brown* is a failure to promote case since "[t]he test for determining whether [a] plaintiff has established a *prima facie* case of failure to promote for discriminatory reasons is the same as the *McDonnel Douglas* test for failure to hire." *Chojar v. Levitt*, 773 F. Supp. 645, 652 (S.D.N.Y. 1991)

[3] Plaintiff does not allege facts to establish futility, nor does he allege that Something Ideal hired a gaffer for the Commercial who was a different race than him. *See generally* Compl. ¶¶ 39-53; *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000) ("Circumstances from which invidious discrimination may be inferred include preferential treatment given to employees *outside* the protected class.") (emphasis added).

because he cannot allege – that he actually applied for either gaffer position.   Accordingly, his failure to hire claims under Title VII, Section 1981, and the NYSHRL are defective as a matter of law.

### B.   The Failure to Hire Claims Separately Fail Because Plaintiff's Allegations Establish That He Was Not Qualified for the DTL Program Gaffer Position

Even if Plaintiff had alleged that he applied for either of the gaffer positions (which he did not), or even if Plaintiff had alleged that applying for the position was futile (which he did not), the failure to hire claims still fail because Plaintiff's allegations establish that he was not qualified for the DTL Program gaffer position – the position he claims Something Ideal unlawfully denied him based upon race.  *See Hughes*, 304 F. Supp. 3d at 446 (holding that a plaintiff pursuing a failure to hire claim must allege, among other things, that he was qualified for the role he sought) (citing *McDonnell Douglas*, 411 U.S. at 802).

Plaintiff's own allegations about his qualifications prevent him from meeting the alleged criteria by which he says candidates are selected for participation in the DTL Program.  On the one hand, Plaintiff alleges that he "is a highly experienced motion picture lighting technician, who, for over twenty-seven years, has worked on major commercial, feature film, and television productions, primarily as an electrician and as a member of the crew behind the camera."  Compl. ¶ 5; *see also id.* ¶¶ 34-35.  But on the other hand, Plaintiff alleges that the DTL Program is to "allow[] a candidate who has not previously had access to our business, but is qualified in the role, to have access to the production to learn the nuances around commercial production, in a real, hands on way."  *Id.* ¶ 30.  He further alleges that the "goal" of the DTL Program "is for the companies to invest in the building careers and apprenticeship training over a period of several jobs to ensure the needed experience is received."  *Id.* ¶ 57.

Plaintiff cannot have it both ways.  His allegation that he has enjoyed over 27 years of "access" to the commercial production industry is directly at odds with his allegation that he was qualified for a position designed for "a candidate who has not previously had access to [the] business."  By his own account, and regardless of his race, Plaintiff is not qualified for a DTL Program position.  As a self-described veteran of the commercial production industry –  including close to three decades of industry experience as a gaffer, best boy, and electrician – Plaintiff admits that he does not lack prior "access" to the industry.  He therefore does not plead sufficient facts to establish that he was qualified for the DTL Program gaffer position.  Based on his own allegations, his race cannot matter, because even if he was BIPOC, his substantial prior experience in and "access" to the commercial production industry would disqualify him from the DTL Program position. *See Taylor*, 207 F. Supp. 3d at 303 (dismissing Section 1981, Title VII, and NYSHRL claims where the plaintiff failed to make prima facie showing of qualification).

## C.  The Retaliatory Failure to Re-Hire Claims Fail Because Plaintiff Does Not Allege He Engaged in a Protected Activity

To state a claim for retaliation under Title VII, Section 1981, or the NYSHRL, "a plaintiff generally must allege "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Torre v. Charter Communs., Inc.*, 493 F. Supp. 3d 276, 288-89 (S.D.N.Y. 2020) (internal citation omitted); *see Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 56-57 (S.D.N.Y. 2019); *see also Paupaw-Myrie v. Mount Vernon City Sch. Dist.,* No. 21-CV-11237 (CS), 2023 WL 1109702, at *11 (S.D.N.Y. Jan. 30, 2022) (holding that courts evaluate Title VII and Section 1981 retaliation claims under the same standards).

To state a protected activity, a plaintiff must allege "action that protests or opposes statutorily prohibited discrimination." *Giscombe v. New York City Dep't of Educ.*, 39 F. Supp. 3d

396, 401 (S.D.N.Y.2014) (internal quotation marks and citation omitted).   Protected activities "include informal complaints to the plaintiff's supervisors, commencing litigation, or filing a formal complaint."  *Id.*; *see also O'Brien v. City of New York, Dep't of Educ.*, ___ F. Supp. 3d ___, No. 22-CV-3117 (KAM)(LB), 2023 WL 5200476, at *11 (E.D.N.Y. Aug. 14, 2023) (applying same protected activity standards to Title VII and NYSHRL retaliation claims).   And even though "informal protests of discriminatory employment practices, including making complaints to management[,] can constitute protected activity," *see Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 445 (W.D.N.Y. 2021) (citation omitted), "[g]eneralized complaints, however, are insufficient; complaints must be sufficiently specific to make clear that the employee is complaining about conduct prohibited by the applicable discrimination statute."  *McCullough v. John T. Mather Hosp. of Port Jefferson, New York, Inc.*, No. 16-CV-4968 (DRH)(SIL), 2019 WL 1755436, at *8 (E.D.N.Y. Apr. 19, 2019) (citing *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).

　　　Here, Plaintiff alleges that he merely asked "questions" of his production supervisor and a gaffer about the DTL Program.  *See* Compl. ¶ 46.  Merely asking questions, however, is not a protected activity.  *See, e.g., Lawrence v. Thomas Learning, Inc.*, No. 1:05-CV-329 (RFT), 2007 WL 1593270, at *31 (N.D.N.Y. Jun. 1, 2007) (holding that the plaintiff's "mere inquiry" about the defendant's affirmative action plan was "not an allegation of an unlawful employment practice, and thus, does not constitute protected activity"); *c.f. Peddy v. L'Oréal USA, Inc.*, No. 18-CV-7499 (RA), 2020 WL 4003587, at *18 (S.D.N.Y. Jul. 15, 2020) (holding that a plaintiff's responses to an employer's questionnaire did not constitute protected activity because the responses did not allege discrimination based on a protected characteristic).

Notably absent from the Complaint are the alleged questions Plaintiff asked about the DTL Program, the date he allegedly asked the questions, and any alleged statements through which he complained to Something Ideal about race discrimination.  The Complaint offers nothing to establish that Plaintiff's "questions" constituted complaints of race discrimination, let alone somehow put Something Ideal on notice of Plaintiff's opposition to race discrimination.  The most substance from Plaintiff on this point is that he asked his production supervisor "what the DTL designation meant" within the Call Sheet for the Commercial.  Compl. ¶ 49.  That fleeting inquiry is not, and cannot become, the new standard for establishing a protected activity.  The retaliatory failure to re-hire claims should be dismissed.

**D.  The Retaliatory Failure To Re-Hire Claims Separately Fail Because Plaintiff Does Not Allege That He Applied for a Position with Something Ideal *After* He Asked Questions About the DTL Program**

Even if Plaintiff sufficiently pleaded a protected activity, which he did not, the retaliatory failure to re-hire claims still fail because Plaintiff does not allege that he applied for a position with Something Ideal at any time after asking questions about the DTL Program.  *See Chen v. Bowes*, No. 98-CV-2478(EBB), 2000 WL 1849762, at *5 (D. Conn. Nov. 22, 2000) ("It is well established that an essential element to any failure to rehire or promote claim is that the plaintiff has applied for or at least expressed interest in rehire or promotion.") (citing *Brown,* 163 F.3d at 706).

Plaintiff's allegations are woefully lacking on this issue.  He does not allege that he applied for or expressed interest in being offered a position at Something Ideal after his alleged "questions" about the DTL Program.  Instead, he merely alleges that he "has not been re-hired for any subsequent projects by the Defendants."  Compl. ¶ 53.  Plaintiff should not receive a free pass on the requirement for pleading that he applied for a position.  Something Ideal necessarily could not

have unlawfully refused to re-hire Plaintiff if he never applied for a job after his supposed protected activities. Therefore, the retaliatory failure to re-rehire claim should be dismissed.

**E. The Section 1985(3) Claim Fails Because it is Duplicative of Plaintiff's Title VII Claims**

Plaintiff's Section 1985(3) claim is also barred as a matter of law because that statute "does not create substantive rights or liabilities; instead, it is a remedial statute." *Singh v. Excel Sec. Corp.*, No. 14 Civ. 10111 (PAC), 2021 WL 1199469, at *9 (S.D.N.Y. Mar. 30, 2021) (citing *Novotny*, 442 U.S. at 372). Having failed to plead a violation of Section 1981, Plaintiff has therefore not stated a claim under Section 1985(3). Further, even if Plaintiff had pleaded a violation of Section 1981, which he has not, "alleged violations of Section 1981 cannot form the basis of a conspiracy claim under Section 1985(3)." *Tardd v. Brookhaven Nat. Laboratory*, 407 F. Supp. 2d 404, 414 (E.D.N.Y. 2006) (citing *Brown v. Philip Morris, Inc.,* 250 F.3d 789, 805-06 (3d Cir. 2001); *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 532-34 (S.D.N.Y. 1999)).

Nor does Title VII provide a safety route for Plaintiff's Section 1985(3) claim. In the context of employment discrimination claims, it is well-established that Section 1985(3) "may not be invoked to redress violations of Title VII." *Novotny*, 442 U.S. at 378. Yet that is precisely what Plaintiff seeks to do here – redress an alleged violation of Title VII via a claim under Section 1985(3). Accordingly, whether to redress a violation of Title VII or Section 1981, the Section 1985(3) claim in this case fails as a matter of law. *See Singh*, 2021 WL 1199469, at *9 (dismissing discriminatory failure to hire claim under Section 1985(3) as nothing more than plaintiff's "attempt to vindicate his Title VII rights through § 1985(3) – something the law does not allow").

**F. The Claims in the Complaint Fail for Lack of Subject Matter Jurisdiction**

Even assuming that Plaintiff stated one or more of the claims in the Complaint against Something Ideal, the claims still fail for lack of subject matter jurisdiction because Plaintiff does

not have Article III standing to sue.  As explained in Section I of the "Argument" portion of the memorandum of law in support of the motion to dismiss the Complaint by Defendants Meta, AICP, and BBDO Worldwide, Inc., Dkt. No. 25, which Something Ideal adopts and incorporates herein, Plaintiff lacks Article III standing to bring his claims.  Each of the arguments asserted in the other Defendants' separately filed motion to dismiss is applicable to Something Ideal, except for any argument regarding the other Defendants' statuses as non-employers.  Something Ideal incorporates by reference that portion of the other Defendants' separately filed brief in support of their motion to dismiss in order to avoid duplicative briefing and the unnecessary use of the Court's resources.

### G.  Leave to Replead Should Be Denied

The Complaint should be dismissed with prejudice, and Plaintiff's anticipated request for leave to replead his allegations should be denied.  Notwithstanding the latitude litigants are often afforded for repleading their claims, leave to replead should be denied where the proposed amendment would be futile.  *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (per curiam) ("Where it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend.").

The futility rule applies here.  Plaintiff could have – but declined – to allege that he applied for either of the gaffer positions for the Commercial, whether before or after he purportedly engaged in a protected activity.  Plaintiff could have – but declined – to allege that he actually complained to his employer of alleged unlawful discrimination, instead of merely alleging that he asked "questions" about the DTL Program.  There is no reason to think Plaintiff can plead these required facts by taking another bite at the apple.  They are glaring omissions.

Further, Plaintiff has already made his bed as to his lack of qualifications for the DTL Program gaffer his position – a pleading deficiency that requires dismissal of all of his claims. As discussed above, he has alleged that he has over 27 years of experience in the commercial production industry, while also alleging that the DTL Program is designed for "a candidate who has not previously had access to [the] business." Plaintiff, by his own account, is someone who already had access to the commercial production business. He cannot walk back those allegations in an amended pleading. *See Underwood v. Coinbase Glob, Inc.* ___ F. Supp. 3d ___, 2023 WL 1431965, at *6 (S.D.N.Y. Feb. 1, 2023) ("[W]here allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading.").

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Something Ideal respectfully requests the Court grant its motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) and grant such other relief as the Court deems proper.

Dated: November 3, 2023

VENABLE LLP
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 370-6296
jfbeeber@venable.com
nmreiter@venable.com

By:  */s/ Nicholas M. Reiter*
     Jessie F. Beeber
     Nicholas M. Reiter

     *Attorneys for Defendant Something Ideal, LLC d/b/a "M ss ng P eces"*