**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

JAMES HARKER,

       *Plaintiff*

       v.

META PLATFORMS, INC.,
ASSOCIATION OF INDEPENDENT
COMMERCIAL PRODUCERS, INC.,
SOMETHING IDEAL, LLC, doing
business as "M SS NG
P ECES," and BBDO WORLDWIDE, INC.

       *Defendants.*

Civil Action No.: 1:23-cv-07865

**<u>PLAINTIFF JAMES HARKER'S BRIEF IN OPPOSITION TO DEFENDANT</u>**
**<u>SOMETHING IDEAL'S MOTION TO DISMISS</u>**

i

# **Table of Contents**

TABLE OF AUTHORITIES ...........................................................................................iii

Introduction ................................................................................................................ 1

Summary of Argument ............................................................................................... 2

Argument ..................................................................................................................... 4

    A.   The Plaintiff was not required to apply to a position that has no application process and has been injured. ................................................................................ 4

    B.   The Plaintiff has pled a plausible race discrimination claim pursuant to Title VII because he has identified the racially discriminatory hiring practices of the Defendant. ............................................................................................................... 7

    C.   The Plaintiff's First Amended Complaint is in line with typical amendment practice, Rule of Civil Procedure 15, and does not contradict any factual allegations. ............................................................................................................... 9

    D.   The Defendant Something Ideal was on notice of Mr. Harker's interest in working for them, and their retaliatory refusal to rehire him for his protected activity properly states a retaliation claim under § 1981 and Title VII. .............. 12

    E.   Novotny does not bar the use of § 1985(3) to enforce rights secured by § 1981, and Plaintiff's claim survives. ................................................................................ 13

    F.   Leave to Replead is not Before the Court and Should not be Decided .......... 17

Conclusion ................................................................................................................ 17

# TABLE OF AUTHORITIES

## CASES

*Brown v. Coach Stores, Inc.*,
  163 F.3d 706 (2d Cir. 1998) ............................................................................ 7, 13

*Burlington N. & Santa Fe Ry. Co. v. White*,
  548 U.S. 53 (2006) ............................................................................................. 12

*Chambers v. Omaha Girls Club*,
  629 F. Supp. 925 (D. Neb. 1986) ..................................................................... 17

*Colliton v. Cravath, Swaine and Moore LLP*,
  2008 WL 4386764 (Sept. 24, 2008) ............................................................. 9, 10

*Cornell University*,
  584 F.3d 487 (2d Cir. 2009) ................................................................................ 7

*General Bldg. Contractor's Ass'n, Inc., v. Pennsylvania*,
  458 U.S. 375 (1982) ........................................................................................... 14

*Giscombe v. New York City Dept. of Educ.*,
  39 F.Supp.3d 396 (S.D.N.Y. 2014) ................................................................... 11

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
  442 U.S. 366 (1979) ........................................................................................... 13

*Griffin v. Breckenridge*,
  403 U.S. 88 (1971) ............................................................................................. 15

*Hudson v. Teamsters Loc. Union No. 957*,
  536 F. Supp. 1138 (S.D. Ohio 1982) ................................................................ 17

*Littlejohn v. City of New York*,
  795 F.3d 307 (2d Cir. 2015) ................................................................................ 8

*NLRB Case*
  No. 29-CA-27612 ............................................................................................... 13

*Palm Beach Strategic Income, LP v. Salzman*,
  457 Fed. App'x 40 (2d Cir. 2012) ..................................................................... 11

*Patane v. Clark,*
    508 F.3d 106 (2d Cir. 2007) ...................................................................... 12

*Patterson v. Cnty. of Oneida, the Second Circuit,*
    375 F.3d 206 (2d Cir. 2004) ........................................................................ 3

*Rowe Ent., Inc. v. William Morris Agency, Inc.,  (RPP),*
    2000 WL 896929 (S.D.N.Y. July 6, 2000) ........................................... 3, 15

*Spectronics Corp. v. TCI/TKR of Jefferson Cnty., Inc.,*
    17 F. Supp. 2d 669 (W.D. Ky. 1998) ........................................................ 17

*Thompson v. Int'l Ass'n of Machinists & Aerospace Workers,*
    580 F. Supp. 662 (D.D.C. 1984) .............................................................. 17

*Witten v. A.H. Smith & Co.,*
    567 F.Supp. 1063 (D. Md. 1983) .............................................................. 17

## FEDERAL STATUTES

42 U.S.C. § 1981 .......................................................................... 14, 15, 17

42 U.S.C. § 1985(3) .............................................................................. 15

42 U.S.C. § 2000e-2(k) ........................................................................ 14

## STATE STATUTES

N.Y. Exec. Law § 296 ............................................................................ 1

## FEDERAL RULES

Federal Rules of Civil Procedure Rule 15(a)(1) ............................... 9, 10, 18

The Plaintiff, James Harker, by and through his undersigned counsel, files this Memorandum of Law in further support of his Amended Complaint and in Opposition to the Defendant Something Ideal's Amended Motion to Dismiss, (ECF 42), and requests Oral Argument.

## <u>Introduction</u>

Mr. Harker, through his First Amended Complaint, ECF 34, (hereinafter "FAC") and Declaration, ECF 34-2, (hereinafter "Dec.") sets forth the relevant facts that are to be accepted as true for the purposes of the Defendant's Motion. The Defendant misconstrues or misunderstands Mr. Harker's claims.

The Plaintiff has alleged a violation of § 1981 based on the Defendant's discriminatory conduct to prevent Mr. Harker from contracting (Count I), the Defendant's participation in a conspiracy to violate his legal rights because of his race or national origin based on § 1981 (Count II), retaliation in violation of § 1981 (Count III), discrimination in violation of Title VII of the Civil Rights Act of 1956 (Count IV), retaliation in violation of Title VII (Count V), and violation of N.Y. Exec. Law § 296 for conspiring with the Co-Conspirator Defendants in discriminating against Mr. Harker based on his race, color, and/or national origin (Count VI). The actions taken by the Defendants have caused substantial stigmatic harm and economic harm to Mr. Harker, as alleged in the First Amended Complaint.

## **Summary of Argument**

The Defendant first argues that in order to state a claim, Mr. Harker needs to show that he applied for the non-DTL Gaffer position. This argument is simply irrelevant, as Mr. Harker has alleged no discrimination in the hiring for that position.

Next, they argue that he cannot show a plausible race discrimination claim because he does not allege racially motivated criticisms or derogatory comments. This, again, is simply an irrelevant sidebar. While a plaintiff is free to use that kind of evidence to show a violation of Title VII, it is not the only kind of evidence that can be used. Here, Mr. Harker has alleged direct evidence, the existence of hiring policies that plainly require race discrimination against him. Attacking that allegation, the Defendant misstates the facts from the complaint, stating that Mr. Harker "only alleges that four of the positions were filled by BIPOC candidates." However, in Paragraph 82 of the amended complaint, Mr. Harker alleged that "The only characteristic that all DTL employees shared was their "BIPOC" status."

Next, the Defendant argues that because Mr. Harker's theory of the retaliation claim has changed in response to their first Motion to Dismiss, the Court should disregard the changes and thus find that Mr. Harker did not plead a protected activity. This argument is again unavailing, as plaintiffs are free to amend in response to a Motion to Dismiss as long as their new complaint does not factually "directly contradict" the original pleading. New facts are not a direct contradiction unless only one set could be true. That is not the case here, and the Plaintiff's amendment is wholly typical of motion and amendment practice. Mr. Harker

additionally alleged that he "informed Something Ideal … that depriving DTL hires of benefits owed to them under the CBA was racially discriminatory." This notification is a protected activity.

The Defendant then argues that Mr. Harker failed to apply for a position after his protected activity, eliminating liability for the retaliation claims. But again, this is not so. Because Something Ideal does not employ an application process in determining who to hire, they cannot avoid liability by simply arguing that a plaintiff failed to apply. This would create a "quixotic requirement" where any employer who avoids applications is free to retaliate against its employees without fear of liability.

The Defendant then goes on to argue that the § 1985(3) claim fails because it is too similar to the § 1981 and Title VII claims.  However, the SDNY has allowed § 1981 to form the basis for a § 1985(3) claim before. *See Rowe Ent., Inc. v. William Morris Agency, Inc.*, No. 98 CIV. 8272 (RPP), 2000 WL 896929 (S.D.N.Y. July 6, 2000). The *Rowe* Court thought that § 1981 could not be used to remedy discrimination in the making of an employment contract itself, but could provide the basis for a § 1985(3) claim. Here, the Plaintiff's § 1981 injury stems from the Defendant's cooperation with Meta Platforms, Inc. ("META"), BBDO Worldwide Inc. ("BBDO"), and the Association of Independent Commercial Producers, Inc. ("AICP") (collectively, the "Co-Conspirator Defendants") to interfere with his right to contract, and does not solely stem from a failure to hire claim against Something Ideal. For example, in *Patterson v. Cnty. of Oneida*, the Second Circuit found that co-employees who made allegedly racist comments could, by preventing the enjoyment of the rights

3

of employment, interfere with the employment contract in a way that violates Section 1981. *N.Y.*, 375 F.3d 206, 230 (2d Cir. 2004) hereinafter "*County of Oneida*"]. Likewise here, through their communications and agreements with the Co-Conspirator Defendants, the Defendant interfered with Mr. Harker's ability to enjoy the right to contract. While they may also be liable under § 1981 on a failure to hire theory, that does not undermine this non-employment § 1981 claim.

Lastly, the Defendant makes a desperate attempt to avoid liability by claiming that Mr. Harker lacks standing to sue, because he never applied for the DTL-Gaffer job. However, courts in the Second Circuit have long accepted that when an employer does not accept applications for employment, and the Plaintiff had no knowledge of the job, no application is required. The Plaintiff pled facts sufficient to establish both. Agreeing with the Defendant on this point would allow employers to discriminate against prospective employees as often as they want, on the sole condition that they forego the use of applications. That cannot be, and is not, the law in the Second Circuit.

## Argument

### A. The Plaintiff was not required to apply to a position that has no application process and has been injured.

The Defendant first argues that in order to state a claim, Mr. Harker needs to show that he applied for the non-DTL Gaffer position. Mr. Harker has alleged no discrimination in the hiring for that position, making this entire argument irrelevant. Beyond this, a plaintiff is not required to show he applied for a job before suing under § 1981 or Title VII when the vacancy was not posted, and when the employee had no

knowledge of the vacancy before it was filled. *Petrosino v. Bell Atlantic*, 385 F. 3d 210, 228 (2nd Cir. 2004). This is obvious, especially here, where the employer does not accept applications for positions. Mr. Harker did not apply for the best boy position (FAC ¶ 40; Dec. ¶ 5,) and no one else did either. FAC ¶ 41; Dec. ¶ 6.[1] Instead, the Defendant, Something Ideal simply offered him the position. That is, the Defendant, Something Ideal, created the applicant pool, chose an applicant, and offered him the position. This is the industry standard for the commercial production industry. FAC ¶ 137; Dec. ¶ 4. Further, the Plaintiff pled facts sufficient to meet this requirement. He pled that Something Ideal did not post notice of a vacancy (FAC ¶ 135) and that he had no knowledge of any DTL positions (FAC ¶ 136). This is all he is required to plead to satisfy his pleading requirement. He does not, as Something Ideal implies, need to prove that he applied for other jobs on set.

Additionally, the Defendant attempts to conflate the DTL-Gaffer and the non-DTL Gaffer positions, which are entirely separate roles. The Plaintiff pled a distinction between the two jobs (see e.g. FAC ¶ 134-35) and on a motion to dismiss, Plaintiff's allegations are presumed true. Beyond this, the Defendant has previously treated the two jobs as separate in its own briefing, arguing in its First Motion to Dismiss that the Plaintiff was overqualified for the DTL job, but could have applied for the Gaffer role; in essence, that the qualifications for the two roles are mutually exclusive. *See* ECF 27 at 13. The Defendant cannot now plausibly claim that instead

---

[1]  All ECF page numbers cited are the ECF page numbers at the top of the page.

of being mutually exclusive, the two roles are actually identical, and applying for one is applying for the other. The Defendant cannot have its cake and eat it too.

Lastly, the *Petrosino* rule waives the application requirement when there is no way for an applicant to have applied. This rule is often applicable in the commercial production industry because of the way hiring is done; there is rarely a formal application, and instead, known workers in each specialty wait to receive calls from a production company that needs someone with their skills. In other words, in this industry, the employer makes the first move. If the Court determined that the *Petrosino* rule does not apply here, then the entire commercial production industry (and any that uses a similar method to hire), has received a carte blanche exception from Title VII and § 1981.

Because the "DTL Gaffer" and the "non-DTL Gaffer" are separate and distinct jobs, and because the Plaintiff alleges no discrimination in selection for the Gaffer position, the only relevant inquiry focuses on the DTL Gaffer position, and there was no application available for this job. Therefore, the Defendant should not be able to argue that the Plaintiff should have applied; they intentionally made that impossible.

The Defendant attempts to rehash this line of argument, dressing it up as a standing issue. This is equally meritless, for many of the same reasons. In addition to the *Petrosino* rule, which the Plaintiff satisfies, the Defendant's argument also raises the bar for a discrimination claim far above that set by the Second Circuit, which stated that "**the pleading requirements in discrimination cases are very lenient, even de minimis**. Thus, the general rule of *McDonnell Douglas* and

*Burdine* is subject to modification where the facts of a particular case make an allegation of a specific application **a quixotic requirement**." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). It would be quixotic, or impractical, to require the Plaintiff to apply to a position that does not accept applications.[2] The Defendant is wrong when it argues that Mr. Harker needed to apply for a job that did not accept job applications, whether they couch it as a merits argument or a standing deficiency.

### B. The Plaintiff has pled a plausible race discrimination claim pursuant to Title VII because he has identified the racially discriminatory hiring practices of the Defendant.

Next, they argue that Mr. Harker cannot show a plausible race discrimination claim because he does not allege racially motivated criticisms or derogatory comments. This again, is simply irrelevant. To support this borderline frivolous argument, they cite *Liebowitz v, Cornell University*, 584 F.3d 487, 502 (2d Cir. 2009). The block quote that the Defendant provides from that case states that a plaintiff may satisfy the minimal inference requirement by alleging "[T]he employer's criticism of the plaintiff's performance in ethnically degrading terms; or [through] its invidious comments about others in the employee's protected group; or [through] **the more favorable treatment of employees not in the protected group**..." (emphasis added). Under the very quote that Defendant provides, outlining the standard that the Plaintiff must meet, the complaint survives the Motion to Dismiss. The Plaintiff has adequately alleged that BIPOC employees were treated better than

---

[2] *See* Plaintiff's Response to Co-Conspirators' Motion to Dismiss Section D, and incorporated herein by reference.

the Plaintiff was in their hiring; they had exclusive access to higher-paying DTL roles, while he did not.

Mr. Harker has pled that Something Ideal implemented DTL, (FAC ¶ 25), and that Something Ideal implemented it on the December 14, 2022 shoot. FAC ¶ 53. He also pled that the DTL Program involves a commitment to "hire a BIPOC candidate to work alongside the chosen role." FAC ¶ 22. He also alleged that the candidates hired for the DTL roles conformed to the racial requirements of the DTL program. FAC ¶ 82. This is a straightforward allegation of racial preferences in hiring, no racial remarks are required.

Attacking that allegation, the Defendant misstates the facts from the complaint, stating that Mr. Harker "only alleges that four of the positions were filled by BIPOC candidates." ECF 41 at p. 19. The Defendant also claims that the "Plaintiff does not allege the names or races of the five other DTL program employees that he alleges Something Ideal employed for the Commercial." ECF 41 at 10-11. This is simply incorrect. Mr. Harker alleged that "The only characteristic that all DTL employees shared was their "BIPOC" status." FAC ¶ 82.

Mr. Harker needs only to show "some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn*, 795 F.3d at 307. This he has done, by alleging the Production Supervisor admitted that DTL refers to the "Double The Line" program designed by the AICP (FAC ¶¶ 19-33), that this program is designed to discriminate based on race (FAC ¶ 22), and that the

personnel hired under it were racially homogenous. FAC ¶ 82. This is enough to satisfy the Plaintiff's "minimal burden" at this stage. *See Littlejohn*, 795 F.3d at 311.

### C. The Plaintiff's First Amended Complaint is in line with typical amendment practice, Rule of Civil Procedure 15, and does not contradict any factual allegations.

The Defendant argues that the First Amended Complaint's allegations regarding a protected activity should be disregarded because it makes claims different from those in the original complaint. See ECF 41 at 19. That is the very idea of an amended complaint under Rule 15. Rule 15 gives the Plaintiff, as a matter of right, the opportunity to replead with new allegations within 21 days, provided those allegations do not "directly contradict the facts set forth in his original complaint." *Colliton v. Cravath, Swaine and Moore LLP*, 2008 WL 4386764 at *6 (Sept. 24, 2008).[3] Besides this, the present case is quite different. Colliton was an attorney who had been arrested for patronizing underage prostitutes and subsequently fired by Cravath, Swaine, and Moore LLP ("Cravath"). In Colliton's original complaint, he pled that he was an attorney at Cravath. After the case law clearly showed that they were within their rights to terminate an attorney for serious criminal behavior, Colliton amended his complaint to state that he was employed in a non-attorney role. The two statements are contradictory and made by a litigant who was previously disbarred for unethical conduct. The Defendant neglected to mention this context, and omitted the part of the quote that spoke of "direct[] contradict[ion]," leaving the

---

[3] Defendant cited this case, but omitted the portion of the quote regarding a "direct contradiction."

impression that *Colliton* bars the use of an amendment to respond to a Motion to Dismiss, which is obviously not the case.

*Colliton* is dissimilar to this case, both on the facts and the law. Here, the Plaintiff amended to add additional information and a new theory of liability in response to the Defendant's Motion to Dismiss. Amending to meet the arguments presented by a responsive motion was explicitly contemplated by the Rules Advisory Committee, and the Committee looked favorably upon the practice.

The Rule 15 Committee Notes on Rules – 2009 Amendment explains that an amendment as of right is allowed within 21 days of a responsive pleading because,

> [that] will **force the pleader to consider carefully and promptly the wisdom of amending to meet the arguments in the motion**. A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim. It also should advance other pretrial proceedings.

Fed. R. Civ. P. 15(a)(1) advisory committee's note to 2009 amendment (emphasis added). Rule 15 contemplates significant changes between an original complaint, and one amended as of right under Rule 15(a)(1); the Defendant's arguments would deprive the rule of all meaning, and result in its effective repeal. This Court should not cooperate in that effort.

Indeed, there is no support in the Second Circuit for the proposition that a Court can ignore a properly filed amended complaint under Rule 15(a)(1) unless that amendment directly contradicts the original. The examples cited by the Defendant all deal with complaints that directly contradict the original complaint.  *See e.g.* *Colliton*, 2008 WL 4386764, at 6* ("Where a 'plaintiff blatantly changes his statement

of the facts in order to respond to the defendant['s] motion to dismiss ... [and] **directly contradicts the facts set forth in his original complaint**' a court is authorized to 'accept the facts as described in the original complaint as true.'"); *Palm Beach Strategic Income, LP v. Salzman*, 457 Fed. App'x 40, 42 (2d Cir. 2012) ("because PBSI's amended complaint **directly contradicted** three of its prior complaints ... the court had no obligation to accept the amended complaint's allegations as true") (emphasis added).

The rule for amending is not, and never has been, that a plaintiff is barred from changing its theory of injury, pleading new facts, or even amending to respond to a Motion to Dismiss.  Instead, the rule is that the amended complaint may not directly contradict the original. The Plaintiff has complied with this rule, by pleading new facts that support a retaliation theory; facts that, while not contained in the original complaint, are not contradictory to it either.

The Defendant also argues that the Plaintiff has not pled a protected activity under Title VII and § 1981. The Defendant concedes that the standards governing "protected activities" are the same under both statutes. To plead a protected activity, a plaintiff must allege "action that protests or opposes statutorily prohibited discrimination.... Informal complaints to supervisors ... are protected activities under Title VII." *Giscombe v. New York City Dept. of Educ.*, 39 F.Supp.3d 396, 401 (S.D.N.Y. 2014) (cleaned up). The Second Circuit has recognized that "Title VII's anti-retaliation provision is broader than that of its discriminatory action provision, and that any action that 'could well dissuade a reasonable worker from making or

11

supporting a charge of discrimination' could constitute retaliation." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)).

The Defendant states that "The Complaint offers nothing to establish that Plaintiff... somehow put Something Ideal on notice of Plaintiff's alleged opposition to race discrimination." ECF 41 at 23. The Plaintiff did allege that he made such a complaint to his supervisor. *See* FAC ¶ 145 ("Because the 'DTL' category is defined by race, Mr. Harker expressed to Shun Tsuchiya, Something Ideal's production supervisor for the December 14, 2022 Meta production, that depriving DTL employees of benefits owed to them under the CBA **was racially discriminatory**." (emphasis added). This was a protected activity, and Defendant's Motion to Dismiss is wrong.

> **D. The Defendant Something Ideal was on notice of Mr. Harker's interest in working for them, and their retaliatory refusal to rehire him for his protected activity properly states a retaliation claim under § 1981 and Title VII.**

The Defendant argues that the Plaintiff did not apply for work with Something Ideal after he engaged in protected activity, and thus, he cannot maintain a claim for retaliatory failure to rehire him. ECF 41 at 25. This argument fails for the same reason their "application" argument fails in relation to the DTL Gaffer position. If an employer does not accept applications as part of their hiring process, they cannot turn around and state that "having submitted an application" is a requirement to make out a discrimination claim. See Section 1, *supra*. To rule for the Defendant on this issue would allow employers to discriminate against whistleblowers at will, as long

as they eliminate the "application" process and instead use a system where the employer makes the first move in offering employment to a potential employee. Our civil rights laws are not so empty as that. Indeed, The "general rule of *McDonnell Douglas* and *Burdine* is subject to modification where the facts of a particular case make an allegation of a specific application a quixotic requirement." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998). This flexibility is designed to ensure that defendants cannot manipulate pleading requirements to insulate discriminatory programs from judicial intervention.

Beyond this, the Defendant is wrong in stating that it had no knowledge of Mr. Harker's interest in working for them, and thus no reason to offer him work.  The Defendant Something Ideal entered into a settlement with the NLRB, of a series of labor charges Mr. Harker brought against them. To settle the charge, they agreed to offer him work. *See* NLRB Case No. 29-CA-276120. For them to now argue that they had no way of knowing that Mr. Harker wanted work from Something Ideal is simply farcical. The Plaintiff has properly pled his retaliation claims against the Defendant. He has alleged protected activity and a subsequent retaliatory refusal to offer him future work.

### E. Novotny does not bar the use of  § 1985(3) to enforce rights secured by § 1981, and Plaintiff's claim survives.

The Plaintiff properly relies on § 1981 to support his § 1985(3) claim. The Plaintiff does not state a § 1985(3) claim based on either Title VII or the NYHRL. In fact, the Supreme Court in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) barred the use of § 1985(3) to enforce rights secured by Title VII because,

"under Title VII, cases of alleged employment discrimination are subject to a detailed administrative and judicial process," and that "[i]f a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of these detailed and specific provisions of the law." 442 U.S. at 372, 375-76. For this reason, the Court ruled that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Id.* at 378.

This holding is not properly extended to the § 1981 context because Title VII and § 1981 race discrimination cases differ in several important respects. In a Title VII case, a plaintiff can win on a disparate impact theory (*see* 42 U.S.C. 2000e-2(k)), while in a § 1981 case, a plaintiff must show intentional racial discrimination. *General Bldg. Contractor's Ass'n, Inc., v. Pennsylvania*, 458 U.S. 375 (1982) (holding that § 1981 requires a showing of intent). At the same time, a plaintiff who wishes to take advantage of the lowered standards of proof available under Title VII must go through an administrative process with the EEOC before filing suit, while a § 1981 plaintiff does not. Lastly, Title VII subjects a recovering plaintiff to damages caps (42 U.S.C. § 1981a(b)), while § 1981 does not. When the *Novotny* Court held that 1985(3) could not be used to secure the rights guaranteed by Title VII (thereby taking advantage of the lowered Title VII standards, plus the lack of administrative burden and the lack of damages caps of § 1985(3)), the Court essentially held that the plaintiff cannot pick the best of each statutory scheme.

Combining §§ 1981 and 1985(3) does not present the same issue, as both statutes require a showing of intentional discrimination, and neither provides an

14

administrative process that must be completed before suit. *See General Bldg. Contractor's Ass'n,* 458 U.S. at 391 (holding that § 1981 requires a showing of intent); *Griffin v. Breckenridge* 403 U.S. 88, 102 (1971) (holding that § 1985(3) requires a showing of intent). Likewise, neither statute contains a damages cap. These parallel showings and parallel processes make sense in the historical context, as they were both enacted in the same era, originally as part of Reconstruction. Together they form one statutory framework, while Title VII forms another, separate framework enacted alongside it in another era.

The Defendant Something Ideal's (and the Co-Conspirator Defendants') actions described in the First Amended Complaint constitute an unlawful race-based conspiracy in malicious and a willful violation of Mr. Harker's rights contrary to 42 U.S.C. §§ 1981 and 1985(3), and thus have caused Mr. Harker to be damaged. *See Rowe Ent., Inc. v. William Morris Agency, Inc.,* 2000 WL 896929, at *13 (S.D.N.Y. July 6, 2000) (holding that a § 1981 claim can satisfy the second element of a § 1985(3) claim that requires deprivation of equal protection of the laws or privileges and immunities) (aff'd, 167 F. App'x 227 (2d Cir. 2005) (on appeal, holding only that plaintiffs' failure to prove intentional discrimination caused their claims to fail, without discussing the interplay between §§ 1981 and 1985).

There is no binding precedent on whether § 1981 can support a § 1985(3) claim in the Second Circuit. However, the *Novotny* argument that § 1985(3) cannot be supported by "employment claims" and thus § 1981 cannot be used, is not relevant to

the analysis against the Co-Conspirator Defendants.[4] As against the Defendant Something Ideal, that is discussed below.

Because Mr. Harker has properly pled that the Defendants violated his right to form contracts and work for Something Ideal free of racial discrimination, and that the Defendants conspired together to effectuate this result, the Court should decline to dismiss the claims under §§ 1981 and 1985(3). The Plaintiff's § 1981 complaint against Something Ideal stems from its engagement with AICP and with its clients, (BBDO and META) to bind itself to a discriminatory course that injured the Plaintiff. This is not the kind of "employment contract" that the *Rowe* Court excluded from its holding because it is not an employment contract at all.

Rather Mr. Harker alleges that the Defendant engaged in actions designed to disrupt his ability to contract and obtain employment, based on his race. Put another way, the § 1981 claim upon which the § 1985(3) claim rests relies on actions the Defendants took well before they ever spoke to Mr. Harker about a job on set, and likely before they determined to hire him as a Best Boy Electrician. The relevant harm here was inflicted when Something Ideal agreed with the Co-Conspirator Defendants to implement a racially discriminatory hiring program, binding themselves to a course where they would refuse to consider the Plaintiff for any DTL positions. By the time they spoke to Mr. Harker for the first time, they had already inflicted the harm by adopting a hiring program that violated § 1981.

---

[4] Plaintiff is *not* bringing a § 1981 *employment discrimination* claim against the Co-Conspirator Defendants. He is bringing such a claim, in the alternative, against Defendant Something Ideal.

The Plaintiff also alleges, in the alternative, a § 1985(3) claim against only Something Ideal based on his § 1981 employment discrimination claim. As discussed above, this does not conflict with *Novotny*, has ample support in courts throughout the country, and aligns with the purpose of § 1981 and 1985(3). As such, neither § 1981 claim should be dismissed, nor should the Plaintiff's § 1985(3) claim be dismissed. Further, numerous sister courts have held that § 1981 can provide the rights enforced through § 1985(3) even in core employment claim,[5] and there is no Second Circuit precedent to the contrary.

### F. Leave to Replead is not Before the Court and Should not be Decided

The Defendant asks this court to deny leave to replead, but no party has moved for such leave, and the question is therefore not properly before the Court.  Because there is no pending motion for leave to replead, and because the issue has not been briefed, the Court should decline to address the issue at this time.

### <u>Conclusion</u>

The Defendant repeatedly misconstrues the facts and the law to support its positions.  They argue that Mr. Harker should have applied for a job, despite the fact

---

[5] See e.g., *Thompson v. Int'l Ass'n of Machinists & Aerospace Workers*, 580 F. Supp. 662 (D.D.C. 1984) (this Court [holds] that the rights created by § 1981 are cognizable under § 1985(3)); *Hudson v. Teamsters Loc. Union No. 957*, 536 F. Supp. 1138, 1147 (S.D. Ohio 1982) ("this Court must hold that Plaintiff's rights created by § 1981 are cognizable under § 1985(3)"); *Witten v. A.H. Smith & Co.*, 567 F.Supp. 1063, 1072 (D. Md. 1983) ("Since the rights embodied in § 1981 were seen as basic to the drafters of the Reconstruction Era civil rights legislation, the conclusion reached by the Griffin Court requires the deduction that § 1981 ... is a permissible basis for a § 1985(3) cause of action."); *Spectronics Corp. v. TCI/TKR of Jefferson Cnty., Inc.*, 17 F. Supp. 2d 669, 671 (W.D. Ky. 1998) ("The right conferred by § 1981 to be free from private interference in the making and enforcement of contracts arguably is precisely the sort of federal right which would be among the "few" giving rise to a remedy under § 1985(3)"); *Chambers v. Omaha Girls Club*, 629 F. Supp. 925, 940 (D. Neb. 1986) ("For purposes of redressing conspiratorial discrimination based upon race, 42 U.S.C. 1981 may serve as the substantive basis for a cause of action under Section 1985(3).")

that they offer no application process. The Defendant argues that because nobody made racially derogatory comments to Mr. Harker, it's impossible for him to make a race discrimination claim (ignoring that he has direct evidence of racially discriminatory hiring policies). They argue (wrongly) that courts should disregard amendments when they are made in response to motions to dismiss (effectively arguing for the repeal of Rule 15). They argue that there is no standing because Mr. Harker did not apply for a job (yet again ignoring that they do not accept applications for employment).  They impliedly ask this court to hold that any employer who refuses to accept applications is exempt from our nation's civil rights laws. Such is clearly not the case.

If a Defendant instituted a similar program to "push forward a demographic shift" in favor of white employees by redlining certain roles for white-only candidates, there would be no argument here. See  FAC ¶ 33 (quoting AICP's website). The standards cannot be any different now; the race of the Plaintiff cannot change the outcome of a case.

For all the foregoing reasons, Defendant Something Ideal's Motion to Dismiss should be denied.

18

Respectfully submitted,
*/s/ Nicholas R. Barry*

Nicholas R. Barry (TN Bar No. 031963)
(pro hac vice granted)
Ian Prior (MA Bar No. 655704)
(pro hac vice forthcoming)
Julia Zsuzsa Haller (NY Bar No. 2851426)
(pro hac vice forthcoming)
AMERICA FIRST LEGAL FOUNDATION
611 Pennsylvania Ave, SE #231
Washington, DC 20003
Telephone: (615) 431-9303
Facsimile: (513) 216-9882
nicholas.barry@aflegal.org
ian.prior@aflegal.org
juli.haller@aflegal.org

Ronald A. Berutti
Murray-Nolan Berutti LLC
30 Wall Street 8th Floor
New York, New York 10005
(212) 575-8500
ron@murray-nolanberutti.com