UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES HARKER,<br><br>   Plaintiff,<br><br>  v.<br><br>META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL, LLC, doing business as "M SS NG P ECES," and BBDO WORLDWIDE, INC.<br><br>   Defendants. | Case No. 1:23-CV-07865-LTS<br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT SOMETHING IDEAL, LLC, D/B/A M SS NG P ECES' MOTION TO DISMISS PLAINTIFF JAMES HARKER'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

VENABLE LLP
Jessie F. Beeber
Nicholas M. Reiter
151 West 42nd Street, 49th Floor
New York, New York 10036
212.370.6296
jfbeeber@venable.com
nmreiter@venable.com

*Attorneys for Defendant Something Ideal d/b/a "M ss ng P eces"*

**Table of Contents**

INTRODUCTION ..................................................................................................................1
ARGUMENT .......................................................................................................................2
    I.     Plaintiff Does Not Satisfy the *Petrosino* Exception ............................................. 2
    II.    Plaintiff Cannot Rely on the *Petrosino* Exception to Establish Standing............... 4
    III.   Plaintiff Ignores the Defects in His Protected Activity Allegations ....................... 4
    IV.   Plaintiff's New and Contradictory Protected Activity Allegations Should
           Not Be Considered ................................................................................................ 7
    V.    Plaintiff's Retaliatory Failure to Re-Hire Claims Still Fail ................................... 8
    VI.   Plaintiff's Section 1985(3) Claim Against Something Ideal Must be
           Dismissed Because it is Duplicative of His Title VII and Section 1981
           Claims .................................................................................................................. 9
    VII.  Plaintiff Does Not Dispute He Violated the Court's Motion Practice Rules........ 10
CONCLUSION..................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                  Pages(s)

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................5

*Brown v. Coach Stores*,
    163 F.3d 706 (2d Cir. 1998)..........................................................................................3

*Colliton v. Cravath, Swaine & Moore LLP*,
    No. 08-CV-0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)…………......….7, 8

*Foss v. Coca-Cola Enterps., Inc.*,
    No. 07-CV-1322 (JS)(WDW), 2008 WL 11447999 (E.D.N.Y. Jan. 4, 2008)...........................9

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
    136 F.3d 276 (2d Cir. 1998)..........................................................................................6

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*,
    442 U.S. 366 (1979)......................................................................................................9

*McCall v. City of Danbury*,
    116 F. Supp. 2d 316 (D. Conn. 2000), *aff'd*, 16 Fed. App'x 77 (2d Cir. 2001) ........................9

*Petrosino v. Bell Atlantic*,
    385 F.3d 210 (2d Cir. 2004)...............................................................................2, 3, 4, 8

*Pope v. ESA Servs., Inc.*,
    406 F.3d 1001 (8th Cir. 2005), *abrogated on other grounds by Torgerson v.
    City of Rochester*, 643 F.3d 1031 (8th Cir. 2011)......................................................................6

*Rich v. Assoc. Brands Inc.*,
    559 Fed. App'x 67 (2d Cir. 2014)..........................................................................................2

*Singh Excel Sec.
    Corp.*, No. 14 Civ. 10111 (PAC), 2021 WL 1199469 (S.D.N.Y. Mar. 30,
    2021), *aff'd*, No. 21-1092-cv, 2022 WL 2187206 (2d Cir. June 17, 2022) ...............................9

*Townsend v. Benjamin Enterps., Inc.*,
    679 F.3d 41 (2d Cir. 2012)..........................................................................................6

**Statutes**

29 U.S.C. § 158(a)(1)...............................................................................................................6

42 U.S.C. § 1981......................................................................................................................9

42 U.S.C. § 1985(3) .......................................................................................................1, 9, 10

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................................8, 10

Federal Rule of Civil Proceudre 15 ................................................................................................8

## INTRODUCTION

Sometimes, a litigant's omissions speak louder than his words. Notably absent from the Plaintiff's opposition brief is any rebuttal of his admitted knowledge of the gaffer role at Something Ideal. As a self-proclaimed 27-year commercial production industry veteran, Plaintiff knew that Something Ideal employed gaffers on commercial productions. If he wanted a gaffer role, he could have (and should have) said so. He did not. He asks the Court to turn a blind eye to his obvious knowledge of the gaffer position because his failure to apply for the job – whether informally or otherwise – is inexplicable. The Court should not give him a free pass here – either on his failure to apply for the position or his failure to rebut Something Ideal's argument.

Plaintiff also omits a meaningful response to his lack of standing to sue. His entire standing argument depends upon his claim that he should be excused from applying for a gaffer role. Since he needed to at least express *some* interest in the gaffer role, he lacks standing.

Plaintiff's omissions do not end there. He also fails to address his deficient allegations of a protected activity for his retaliation claims. His opposition brief ignores the argument about his so-called "questions," and why his undescribed questions do not meet the protected activity standard. He also ignores his admission that he did not have a good-faith, reasonable belief that he opposed unlawful conduct under Title VII, insofar as he alleges he told Something Ideal that its payment practices "may" deprive DTL Program employees of their benefits under a collective bargaining agreement. He pretends that these pleading deficiencies do not exist. But they do.

Finally, Plaintiff disingenuously suggests that his Section 1985(3) claim against Something Ideal is not an alleged "employment contract" discrimination claim. That argument does not mesh with the allegations in the Amended Complaint. Because the Section 1985(3) against Something Ideal seeks to redress an alleged Title VII violation, the claim is barred as a matter of law.

## ARGUMENT

### I. Plaintiff Does Not Satisfy the *Petrosino* Exception

To the extent the *Petrosino* exception exists for failure to hire and re-hire claims,[1] Plaintiff does not satisfy the exception. He admits he knows that "[a] gaffer is the most senior or highest-level electrician on a production." Am. Compl. ¶ 35. He further admits that he and Something Ideal entered into a prior settlement agreement, under which Something Ideal agreed to offer him employment on future commercial productions. *See* Pl's. Opp'n Br., ECF No. 46 at 13.

These two admissions prevent Plaintiff from satisfying the *Petrosino* exception. With knowledge of the gaffer role for commercial productions, and having struck a deal for future employment offers from Something Ideal, it was incumbent upon Plaintiff to notify Something Ideal of his supposed interest in the gaffer job. He could have at the very least expressed interest or applied informally for future work as a gaffer – a position he admits he knew about.

This is not a case where an employer covertly created a position without the applicant's knowledge. Plaintiff knew that Something Ideal employed gaffers on commercial productions, yet he never indicated he wanted gaffer work. Therefore, even if the gaffer vacancy for the Meta commercial was not posted (the first *Petrosino* exception requirement), Plaintiff still cannot meet either of the other *Petrosino* exception requirements, which require him to plead that he either had no knowledge of the vacancy or attempted to apply through informal procedures. *See Petrosino v. Bell Atlantic*, 385 F.3d 210, 227 (2d Cir. 2004). His knowledge of the gaffer role is admitted, *see* Am. Compl. ¶ 35, and he does not allege that he applied for the position informally or otherwise. Therefore, he cannot rely upon *Petrosino* to save his claims.

---

[1] In response to a plaintiff's attempted reliance on *Petrosino* in a failure to hire case, the Second Circuit stated that the "exception to the 'specific job' requirement *may or may not* apply in the context of a failure to hire." *Rich v. Assoc. Brands Inc.*, 559 Fed. App'x 67, 69 (2d Cir. 2014). There is no reason to extend the *Petrosino* exception to this case.

2

Plaintiff also cannot pick and choose which gaffer role he now wants. He tellingly admits that he "did not seek to be a non-DTL gaffer." *See* Opp'n Br., ECF No. 45 at 8. This exposes the contrived nature of his lawsuit, and why he lacks standing to bring his claims. He concedes he is not a bona fide applicant. If he was, then he would not have excluded himself from consideration for the non-DTL gaffer position, which provides the same pay and benefits as the DTL gaffer role. For example, Plaintiff does not allege that the non-DTL gaffer role offered better pay as compared to the DTL gaffer role, or vice versa. A bona fide applicant in Plaintiff's position and with Plaintiff's knowledge of the commercial production industry would have, at a minimum, communicated to Something Ideal *some* interest in performing gaffer work. Plaintiff never did.

Instead, Something Ideal first learned about Plaintiff's alleged interest in a gaffer job via this lawsuit. That is exactly the situation *Petrosino* and *Brown v. Coach Stores* are intended to prevent – an employer unfairly accused of discriminating against an applicant who never communicated his interest in a particular position. *Petrosino*, 385 F.3d at 227 ("The requirement also protects employers from the unfair burden of having to keep track of all employees who have generally expressed an interest in promotion and to consider each of them for any opening for which they are qualified but did not specifically apply.") (internal quotations omitted) (citing *Brown v. Coach Stores*, 163 F.3d 706, 710 (2d Cir. 1998)).

Plaintiff has no answer for this argument, except to admit that he is only interested in the DTL-gaffer role. He ignores his conceded knowledge of the gaffer position for commercials and his failure to notify Something Ideal of his supposed interest in the job. Accordingly, he does not satisfy the *Petrosino* exception, and his failure to hire/re-hire claims should be dismissed on this basis alone. Otherwise, a new precedent will be created under which plaintiffs may assert *post hoc* failure to hire/re-hire claims without previously expressing interest in positions they know exist.

3

## II. Plaintiff Cannot Rely on the *Petrosino* Exception to Establish Standing

Plaintiff's opposition brief exposes his lack of standing to sue for a gaffer job offer. First, he concedes he was not interested in a non-DTL gaffer role, thereby effectively admitting that he was not a bona fide applicant. Plaintiff can hardly claim he has been injured as a result of Something Ideal's hiring decisions in light of his admission that he did not want the non-DTL gaffer role – a position that involved the same pay and benefits as the DTL gaffer role. And second, even if Plaintiff's lack of sincere interest in receiving a gaffer offer is excused, which it should not be, his standing argument still fails because he cannot satisfy the *Petrosino* exception to the application requirement. He puts all of his standing eggs in that basket. *See* Pl's. Opp'n Br., ECF No. 46 at 6-7. Therefore, for the reasons discussed above as to why *Petrosino* is not satisfied, Plaintiff's claims must also be dismissed for lack of standing.

## III. Plaintiff Ignores the Defects in His Protected Activity Allegations

In its moving brief, Something Ideal showed two reasons why Plaintiff's protected activity allegations are lacking: (1) the undescribed "questions" that Plaintiff supposedly asked his supervisor about the DTL Program did not constitute opposition to unlawful race discrimination; and (2) Plaintiff does not plead he held a reasonable, good-faith belief that he was opposing unlawful race discrimination by telling his supervisor that Something Ideal's pay practices "may" deprive BIPOC employees of their benefits under a collective bargaining agreement. *See* Initial Br., ECF No. 41 at 19-20. Plaintiff ignored both of these points in his opposition brief.

The disregard for these arguments is telling. First, Plaintiff ignores Something Ideal's point that he did not allege the specific "questions" he allegedly asked about the DTL Program, apparently conceding that the "questions" allegation in his Amended Complaint is irrelevant to the protected activity issue. He says *nothing* in his opposition brief as to why his so-called "questions"

4

satisfy the protected activity pleading standard. *See* Opp'n Br., ECF No. 46 at 9-12. In any case, Plaintiff's alleged "questions" are inadequate for the reasons previously stated. Therefore, the Court should not consider the "questions" allegation further, as Plaintiff has abandoned it.

He also does not sufficiently address Something Ideal's argument about his failure to plead a reasonable, good-faith belief of opposition to race discrimination. All he can offer is a citation to paragraph 145 of the Amended Complaint. Opp'n Br., ECF No. 46 at 12. That paragraph tells only part of the relevant story, however. It must be read in tandem with the paragraph immediately beforehand, paragraph 144, in which Plaintiff alleges his actual comment to Something Ideal:

> Mr. Harker communicated to Defendant Something Ideal, that their payment practices *may* deprive DTL employees of benefits they were owed under the IATSE Collective Bargaining Agreement.

Am. Compl. ¶ 144 (emphasis added).

Then, in the next paragraph of the Amended Complaint (which is the only paragraph cited in Plaintiff's opposition brief on this issue), Plaintiff alleges:

> Because the "DTL" category is defined by race, Mr. Harker expressed to Shun Tsuchiya, Something Ideal's production supervisor for the December 14, 2022 Meta production, that depriving DTL employees of benefits owed to them under the CBA was racially discriminatory.

*Id.* ¶ 145.

When the two paragraphs are read together, as they must be, the Court can see these allegations for what they are. Paragraph 144 alleges Plaintiff's actual comment to Something Ideal (that its payment practices only might deprive DTL employees of certain benefits), whereas paragraph 145 sets forth Plaintiff's conclusory assertion that his alleged comment constituted opposition to race discrimination merely because it referenced "the 'DTL' category," which Plaintiff alleges "is defined by race." But only Plaintiff's actual alleged comment to Something Ideal – not his characterization of that comment – is relevant here. *See Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) ("mere conclusory statements" are not entitled to the presumption of truth on a motion to dismiss). He cannot clean up the inadequacy of his alleged comment by relying upon his after-the-fact characterization of the alleged comment.

As much as he wishes it was not the case, Plaintiff's use of the word "may" in paragraph 144 matters. It means that, at most, he expressed his suspicion of a *potential* violation of Title VII. That is not enough to satisfy the requirement that a plaintiff plead a reasonable, good-faith belief of a Title VII violation. *See Townsend v. Benjamin Enterps., Inc.*, 679 F.3d 41, 48 (2d Cir. 2012) (noting that where a plaintiff did not know whether allegations of harassment were true, the plaintiff could not satisfy the reasonable, good-faith belief requirement). Plaintiff never addresses this point in his opposition brief.

Nor could the alleged comment in paragraph 144 of the Amended Complaint have put Something Ideal on notice of Plaintiff's purported opposition to unlawful race discrimination. *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998) ("[I]mplicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII."). The alleged comment is devoid of any reference to supposed race discrimination. It more closely suggests a potential violation of collective bargaining rights, as opposed to a potential violation of Title VII.[2] The mere reference of BIPOC employees is not enough. *Pope v. ESA Servs., Inc.*, 406 F.3d 1001, 1010 (8th Cir. 2005) (complaint that "there were no blacks in the district-manager position in his region" did not constitute a protected activity), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

---

[2] Plaintiff's recourse for alleged retaliation for supposedly alleging a collective bargaining agreement violation is an unfair labor practice charge for retaliation before the National Labor Relations Board, *not* a Title VII retaliation suit in court. *See* 29 U.S.C. § 158(a)(1).

6

Plaintiff's failure to plead sufficient details about his alleged comment is compounded by the fact that he has already once amended his complaint. The present allegations are, apparently, the best he can do. His allegations do not establish that he put Something Ideal on notice of conduct prohibited by Title VII, nor can he establish that he held a reasonable, good-faith belief of an *actual* Title VII violation. Therefore, the retaliation claims should be dismissed.

## IV. Plaintiff's New and Contradictory Protected Activity Allegations Should Not Be Considered

Plaintiff's newfound protected activity allegations are not "typical" of amendments in response to a motion to dismiss. In the typical case, a plaintiff will augment *his original allegations* with more concrete facts. Had Plaintiff engaged in "typical" amendment practice, then the Amended Complaint would have more fulsomely described the so-called questions Plaintiff asked his supervisor about the DTL Program and how those questions constituted protected activities.

Plaintiff did not do that. The Amended Complaint contains the same vague reference to undescribed "questions" that was in the Original Complaint. Then, the Amended Complaint impermissibly adds an entirely new set of facts relevant to the protected activity issue. Those new facts should not be considered by the Court for the reasons described in Section IV.C. of Something Ideal's initial moving brief. *See* Initial Moving Br., ECF No. 41 at 15-17.

The Court should reject Plaintiff's attempt to distinguish *Colliton*. The subject matter of *Colliton* may be different, but the pleading gamesmanship in that case is analogous to Plaintiff's tactics in the case at bar. The fact remains that in his Original Complaint, Plaintiff's alleged protected activities were his questions to his supervisor at Something Ideal. *See* Orig. Compl., ECF No. 1 ¶¶ 46, 49, 86. After seeing Something Ideal's motion to dismiss the Original Complaint, Plaintiff changed tack, adding for the first time an allegation that he told his supervisor that Something Ideal's pay practices "may" deprive BIPOC employees of their benefits under a

7

collective bargaining agreement. That latter allegation is not a "question." Therefore, like *Colliton*, the Plaintiff in this case "blatantly change[d] his statement of the facts in order to respond to the defendant's motion to dismiss." *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008).[3]

### V. Plaintiff's Retaliatory Failure to Re-Hire Claims Still Fail

Plaintiff cannot save his retaliatory failure to re-hire claims from dismissal. As an initial matter, he still cannot satisfy the *Petrosino* exception for his failure to re-hire claim because he knows, based on his 27-years of industry experience, that Something Ideal hires gaffers, best boys, and other electrician positions to which Plaintiff may apply. He also fails to allege that he applied, informally or otherwise, for any position with Something Ideal after his alleged protected activity.

The Amended Complaint further fails to plead an adverse employment action. Plaintiff does not allege, whether upon information and belief or otherwise, that Something Ideal has hired other job candidates for electrician-related work subsequent to his alleged protected activity. This is a separate reason for why the retaliatory failure to re-hire claim should be dismissed.

As a last-ditch effort to save his retaliation claims, Plaintiff makes a confusing reference – for the first time in his opposition brief – to a NLRB settlement agreement between him and Something Ideal. *See* Opp'n Br., ECF No. 46 at 13. This argument should not be considered, since it was neither alleged in the Amended Complaint, nor is it within the Court's purview on a Rule 12(b)(6) motion. But even if the Court considers the NLRB settlement argument, it is of no moment to his retaliation argument, since as Plaintiff knows (and conveniently omits from his

---

[3] Relevant to Plaintiff's use of the Rule 15 amendment right to submit new contradictory allegations, Plaintiff makes no effort in his opposition brief to explain why his supposed "pay practices" comment was not alleged in his Original Complaint. It is not as if the alleged comment could have been "new evidence" that Plaintiff discovered after his lawyers reviewed Something Ideal's motion to dismiss the Original Complaint. Assuming the comment was even made, Plaintiff necessarily knew of the alleged comment before he filed his Original Complaint. This further illustrates Plaintiff's obvious alteration of facts to plead around Something Ideal's meritorious defenses.

opposition brief), the obligation to offer Plaintiff future employment pursuant to the NLRB settlement agreement expired on May 9, 2023. The NLRB settlement agreement is an obvious red herring, as evidenced by Plaintiff's failure to allege that he applied for a job, informally or otherwise, at any time after the Meta commercial. It also backfires, as it further establishes that Plaintiff plainly knew of Something Ideal's staffing needs well before the Meta commercial.

### VI. Plaintiff's Section 1985(3) Claim Against Something Ideal Must be Dismissed Because it is Duplicative of His Title VII and Section 1981 Claims

It is well-established that a plaintiff cannot use Section 1985(3) to redress alleged violations of Title VII or employment discrimination claims under Section 1981. *See, e.g., Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, (1979); *Foss v. Coca-Cola Enterps., Inc.*, Case No. 07-CV-1322 (JS)(WDW), 2008 WL 11447999, at *4 (E.D.N.Y. Jan. 4, 2008). Further, in the alleged discriminatory failure to hire context specifically, the Second Circuit has affirmed a district court's dismissal of Section 1985(3) claims. *See McCall v. City of Danbury*, 116 F. Supp. 2d 316, 319-21 (D. Conn. 2000), *aff'd*, 16 Fed. App'x 77, 79 (2d Cir. 2001); *see also Singh Excel Sec. Corp.*, No. 14 Civ. 10111 (PAC), 2021 WL 1199469, at *9 (S.D.N.Y. Mar. 30, 2021), *aff'd*, No. 21-1092-cv, 2022 WL 2187206, at *2 (2d Cir. June 17, 2022).

*McCall* dismissed the plaintiff's race-based failure to hire claims under Title VII and Section 1981. 116 F. Supp. 2d at 320. In addition to race-based discriminatory hiring, the plaintiff in *McCall* alleged that the defendants conspired in violation of Section 1985 to create an application process that discriminated against African-American applicants. *Id.* at 318-20. Having dismissed the Title VII and Section 1981 claims arising from the same allegations, *McCall* also dismissed the Section 1985 claim. *Id.* at 321. The Second Circuit affirmed. 16 Fed. App'x at 79.

The same reasoning in *McCall* applies here. Plaintiff may call his Section 1981 claim against Something Ideal a "non-employment claim," but that does not make it so. The plain

9

reading of the Amended Complaint is that Plaintiff's claims against Something Ideal are for the alleged failure to hire him as a gaffer based upon his race. Regardless of the statutory vehicle, those claims fail as a matter of law for the reasons stated above. And even if Plaintiff had alleged a viable race-based failure to hire claim, which he has not, his Section 1985(3) claim would nonetheless fail, because it arises from the same alleged conduct as his Title VII claim.

### VII. Plaintiff Does Not Dispute He Violated the Court's Motion Practice Rules

Plaintiff does not dispute that he failed to comply with the Court's meet and confer requirement for contemplated motions pursuant to Rule 12(b)(6). *See* Initial Br., ECF No. 41 at 24-25. His disregard for the Court's rules was deliberate, insofar as Something Ideal specifically informed Plaintiff in advance and in writing of the Court's meet and confer requirement prior to filing its motion. *See* Reiter Decl. ¶¶ 5-9. He never responded. Had he responded, the parties could have complied with the Court's rules for potential amendments to the pleadings. Plaintiff has already amended the complaint once, and he admits he does not seek to amend again. *See* Opp'n Br., ECF No. 46 at 17. Therefore, the Court should dismiss the Amended Complaint against Something Ideal *with prejudice* and without leave for Plaintiff to amend (again).

### CONCLUSION

Something Ideal respectfully requests the Court grant its motion to dismiss pursuant to Rule 12(b)(1) and 12(b)(6) and grant such other relief as the Court deems proper.

Dated: February 22, 2024

VENABLE LLP
151 West 42nd Street, 49th Floor
New York, New York 10036
(212) 370-6296

By: /s/ Nicholas M. Reiter
Jessie F. Beeber
Nicholas M. Reiter
*Attorneys for Defendant Something Ideal, LLC d/b/a "M ss ng P eces"*

10