UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES HARKER,

                Plaintiff,

    v.

META PLATFORMS, INC., ASSOCIATION OF INDEPENDENT COMMERCIAL PRODUCERS, INC., SOMETHING IDEAL LLC d/b/a M SS NG P ECES, and BBDO WORLDWIDE, INC.,

                Defendants.

Case No. 1:23-cv-07865 (LTS) (SDA)

**ORAL ARGUMENT REQUESTED**

---

**THE NON-EMPLOYER DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................................1

ARGUMENT .......................................................................................................................................2

I.     PLAINTIFF LACKS ARTICLE III STANDING. ..........................................................2

    A.     Plaintiff Was Not Injured By The Non-Employer Defendants Because He Was Not Qualified For The DTL Program. ...............................................................2

    B.     Plaintiff Was Not Injured By Defendants' "Failure" To Consider Him For A Position That Defendants Had No Reason To Know He Wanted. .......................4

II.     PLAINTIFF'S SECTION 1981 DISCRIMINATION CLAIM FAILS. .............................6

    A.     Plaintiff's Section 1981 Claim Fails For The Same Reasons He Lacks Standing. ................................................................................................................6

    B.     Plaintiff Fails to State A Claim Of Contractual Interference .................................7

    C.     Race Is Not The But-For Cause Of Plaintiff's Failure To Be Hired As A Gaffer. ...................................................................................................................8

III.     PLAINTIFF'S SECTION 1985(3) CONSPIRACY CLAIM FAILS. ................................9

IV.     PLAINTIFF HAS NOT STATED A CLAIM UNDER THE NYSHRL .........................10

CONCLUSION .................................................................................................................................10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albert v. Carovano*,
    851 F.2d 561 (2d Cir. 1988) .................................................................................................. 8

*Alvarado v. United Hospice, Inc.*,
    631 F. Supp. 3d 89 (S.D.N.Y. 2022) .................................................................................... 10

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) .................................................................................................. 3

*Benzinger v. NYSARC, Inc. N.Y.C. Chapter*,
    385 F. Supp. 3d 224 (S.D.N.Y. 2019) .................................................................................... 9

*Brokamp v. James*,
    66 F.4th 374 (2d Cir. 2023) ................................................................................................... 4

*Brown v. Coach Stores, Inc.*,
    163 F.3d 706 (2d Cir. 1998) .................................................................................................. 5

*Brown v. Philip Morris Inc.*,
    250 F.3d 789 (3d Cir. 2001) ................................................................................................ 10

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ........................................................................................................... 8

*Do No Harm v. Pfizer, Inc.*,
    646 F. Supp. 3d 490 (S.D.N.Y. 2022), *appeal filed*, No. 23-15 (2d Cir. Jan. 4,
    2023) ...................................................................................................................................... 3

*Dowdy v. New York City Dep't of Sanitation*,
    No. 22-CV-6284 (ALC), 2023 WL 6258536 (S.D.N.Y. Sept. 26, 2023) ............................ 3, 4

*Evers v. Dwyer*,
    358 U.S. 202 (1958) ............................................................................................................... 6

*Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*,
    28 F.3d 1268 (D.C. Cir. 1994) ............................................................................................... 6

*Fed. Election Comm'n v. Cruz*,
    596 U.S. 289 (2022) ............................................................................................................... 6

*Foss v. Coca-Cola Enters., Inc.*,
    No. 07-cv-1322-JS, 2008 WL 11447999 (E.D.N.Y. Jan. 4, 2008) ......................................... 9

*Ginx, Inc. v. Soho All.*,
    720 F. Supp. 2d 342 (S.D.N.Y. 2010) .................................................................................. 7

*Great Am. Fed. Savings & Loan Ass'n v. Novotny*,
    442 U.S. 366 (1979) ....................................................................................................... 9, 10

*Harris v. Niagara Mohawk Power Corp.*,
    No. 95-CV-788-FJS-GJD, 1998 WL 865566 (N.D.N.Y. Dec. 7, 1998) .................................. 9

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .............................................................................................................. 6

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) .............................................................................................................. 1

*Houser v. Pritzker*,
    28 F. Supp. 3d 222 (S.D.N.Y. 2014) .................................................................................. 2, 3

*Iodice v. Archcare at Terence Cardinal Cooke Health Care Ctr.*,
    No. 20-cv-4217, 2022 WL 4124795 (S.D.N.Y. Sept. 8, 2022) ............................................. 8

*Jackson-Bey v. Hanslmaier*,
    115 F.3d 1091 (2d Cir. 1997) ................................................................................................ 6

*Jenkins v. Arcade Bldg. Maint.*,
    44 F. Supp. 2d 524 (S.D.N.Y. 1999) ..................................................................................... 9

*Jimenez v. Wellstar Health Sys.*,
    596 F.3d 1304 (11th Cir. 2010) ........................................................................................... 10

*Kyles v. J.K. Guardian Sec. Servs., Inc.*,
    222 F.3d 289 (7th Cir. 2000) ................................................................................................. 6

*Ladson v. Ulltra E. Parking Corp.*,
    853 F. Supp. 699 (S.D.N.Y. 1994) ........................................................................................ 9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .............................................................................................................. 2

*Lunney v. City of New York*,
    No. 22-CV-7668 (LTS), 2023 WL 2368982 (S.D.N.Y. Mar. 6, 2023) ................................ 10

*Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    7 F.3d 1085 (2d Cir. 1993) .................................................................................................... 8

*Patterson v. County of Oneida*,
    375 F.3d 206 (2d Cir. 2004) .............................................................................................. 7, 8

*Perez v. Escobar Constr., Inc.*,
    No. 20-CV-8010-LTS-GWG, 2023 WL 5387541 (S.D.N.Y. Aug. 22, 2023),
    *appeal filed*, No. 23-1240 (2d. Cir. Sept. 7, 2023) ............................................................... 5, 7

*Petrosino v. Bell Atl.*,
    385 F.3d 210 (2d Cir. 2004) .................................................................................................. 4, 5

*Rich v. Associated Brands Inc.*,
    559 F. App'x 67 (2d Cir. 2014) ................................................................................................. 5

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*,
    No. 98-cv-8272, 2000 WL 896929 (S.D.N.Y. July 6, 2000) ................................................... 10

*Rubert v. King*,
    No. 19-CV-2781 (KMK), 2020 WL 5751513 (S.D.N.Y. Sept. 25, 2020) ................................. 8

*Smith v. Loc. Union 28 Sheet Metal Workers*,
    100 F.3d 943 (2d Cir. 1996) ...................................................................................................... 9

*Tardd v. Brookhaven Nat'l Lab.*,
    407 F. Supp. 2d 404 (E.D.N.Y. 2006) ....................................................................................... 9

## STATUTES

42 U.S.C. § 1981 .............................................................................................................. 6, 7, 9, 10

42 U.S.C. § 1985(3) .................................................................................................................. 9, 10

**INTRODUCTION**

Plaintiff's Opposition only confirms why this case must be dismissed. It is black-letter law that a "generalized grievance" is insufficient to establish Article III standing. *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013). But Plaintiff's lawsuit challenging the Double the Line ("DTL") program is precisely that sort of abstract grievance. At bottom, Plaintiff's case is based on his unexpressed desire for one of two gaffer roles—which Plaintiff never communicated to *any* Defendant and for which Plaintiff was unqualified in any event. Plaintiff does not even allege that Defendant Something Ideal (who handled staffing) knew he wished to be a gaffer, much less that the Non-Employer Defendants (who had no insight into or authority over staffing) had any idea that he wanted any role other than the Best Boy position that he accepted from Something Ideal without complaint. Nonetheless, he asks the Court to hold the Non-Employer Defendants liable for conspiring to racially discriminate against him because he was not offered the DTL gaffer role, a role intended for people without Plaintiff's decades of industry experience. Plaintiff's Opposition cannot overcome the multiple fundamental flaws in his claims.

Plaintiff seeks to stave off dismissal in two equally unavailing ways. *First*, Plaintiff argues that he is *only* challenging his failure to be hired as a DTL gaffer, not a non-DTL gaffer. But Plaintiff's claims fail regardless of whether the DTL and non-DTL gaffer roles are interchangeable. If the DTL and non-DTL roles are functionally identical because they pay the same (as Plaintiff contends), then Plaintiff's claims fail because he concedes he "did not seek" to be a gaffer at all. Dkt. 45 ("Opp."), at 8. If they differ because the former is an apprenticeship program (as the Non-Employer Defendants understood it), then Plaintiff's claims *also* fail because he was not qualified for the DTL gaffer role. Either way, Plaintiff's claims fail.

*Second*, to avoid the clear case law dooming Plaintiff's employment-discrimination claims under the civil rights laws he invokes, Plaintiff argues that his claims against the Non-Employer

1

Defendants are not "employment discrimination" claims at all, but rather sound in conspiracy to "prevent[] [him] from forming and maintaining an employment relationship" with Something Ideal. Opp. at 7. But Plaintiff cites no authority, and the Non-Employer Defendants are aware of none, that would imbue this distinction with meaning. The thrust of his claims against the Non-Employer Defendants is that they conspired with Something Ideal to prevent him from entering into an *employment contract for discriminatory reasons*. And regardless of whether Plaintiff's claims are straight employment discrimination or conspiracy, he still lacks standing and fails to state a claim based on a failure to be hired for a role for which he neither applied nor was qualified.

## ARGUMENT

### I. PLAINTIFF LACKS ARTICLE III STANDING.

To establish standing, Plaintiff must plead that the Non-Employer Defendants' actions "caused" him to suffer an "injury in fact" that is "concrete, particularized, and actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Because he was not qualified for the DTL gaffer role and did not apply for *any* gaffer role, Plaintiff has not.

### A.  Plaintiff Was Not Injured By The Non-Employer Defendants Because He Was Not Qualified For The DTL Program.

Plaintiff cannot establish Article III standing because he fails to allege that "he [meets] the minimum qualifications for the [DTL] position." *Houser v. Pritzker*, 28 F. Supp. 3d 222, 237 (S.D.N.Y. 2014) (collecting cases); Opp. at 9. AICP created the DTL program to be an "apprenticeship training" program for diverse candidates without previous "access to [the commercial production] business." FAC ¶¶ 30, 93. Plaintiff's *three decades* of industry "access," including as a gaffer, disqualifies him from the role regardless of his race. *See id.* ¶¶ 34-35.

Plaintiff does not dispute this. Instead, he argues that he *was* qualified for the DTL role because *Something Ideal* allegedly did not implement it as a true apprenticeship program. Opp. at

2

9-10. But that is not sufficient to satisfy the "causation" prong of standing with respect to the *Non-Employer Defendants*. *See* Mot. at 8-11. Plaintiff does not allege that those Defendants had any role in his staffing or that they knew Something Ideal staffed candidates in a manner that allegedly deviated from the apprenticeship program that AICP created and BBDO and Meta agreed to fund.

To avoid this, Plaintiff argues that the Non-Employer Defendants may prove their lack of knowledge later in the litigation. *See* Opp. at 20-21. But Plaintiff must allege standing, *see Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011), and Plaintiff *has not alleged* that the Non-Employer Defendants knew that Something Ideal was hiring "very experienced" candidates for what was plainly advertised as an "apprenticeship" program. FAC ¶¶ 93, 95. Plaintiff's conclusory allegations that Defendants conspired to discriminate through the DTL program, *see* FAC ¶¶ 99-101, 111-13, 116-20, do not help him as they say nothing about the Non-Employer Defendants' knowledge that Something Ideal was allegedly ignoring DTL requirements.

Implicitly acknowledging his pleading failure, Plaintiff separately argues that his qualifications are irrelevant because the DTL program is limited to BIPOC individuals. Opp. at 9-10. This gets the law backwards. Where, as here, a plaintiff does not meet a position's minimum qualifications, courts need not assess whether an employment decision was motivated by race since the plaintiff cannot demonstrate an injury caused by the alleged "discrimination." *See, e.g.*, *Do No Harm v. Pfizer, Inc.*, 646 F. Supp. 3d 490, 506-07 (S.D.N.Y. 2022), *appeal filed*, No. 23-15 (2d Cir. Jan. 4, 2023); *Dowdy v. New York City Dep't of Sanitation*, No. 22-CV-6284 (ALC), 2023 WL 6258536, at *6 (S.D.N.Y. Sept. 26, 2023); *Houser*, 28 F. Supp. 3d at 238.[1]

---

[1] Plaintiff cites *Dowdy* to argue that he was minimally qualified, *see* Opp. at 18, but *Dowdy* establishes the opposite: Plaintiff's claims fail because his industry experience disqualifies him from the DTL gaffer role he claims he was denied, regardless of his race.

3

> **B.    Plaintiff Was Not Injured By Defendants' "Failure" To Consider Him For A Position That Defendants Had No Reason To Know He Wanted.**

Plaintiff also lacks standing because he fails to allege that he "actually applied for the position at issue" or that "application would [have been] futile." *Dowdy*, 2023 WL 6258536, at *5; *see Brokamp v. James*, 66 F.4th 374, 387 (2d Cir. 2023). Plaintiff claims that the application requirement should not apply here because he "could not" have "formal[ly]" applied because there was no formal application process. Opp. at 8, 16. But the Non-Employer Defendants do not argue that Plaintiff lacks standing because he did not submit a "formal" application. Rather, they argue that Plaintiff lacks standing because he never put Defendants on notice that he wanted to be considered for a gaffer position *at all*, even "informally." Mot. 8, 16-17; *see Petrosino v. Bell Atl.*, 385 F.3d 210, 228 (2d Cir. 2004) (at a minimum, plaintiff had to "informally apply[] for the [desired] positions by telling her supervisors that she wished to be considered for the[m]").

Fatally, Plaintiff concedes that he never put Defendants on notice of his interest in any gaffer role. *See* Opp. at 8 ("[Plaintiff] did not apply to any gaffer position … and did not seek to be a non-DTL gaffer."). Plaintiff's allegations establish that he is a repeat player in the industry with almost three decades of experience, FAC ¶¶ 5, 34-35, and he admits that he has frequently worked with Something Ideal. *See* Dkt. 46 ("SI Opp."), at 13. The only plausible inference to draw is that Plaintiff was aware of Something Ideal's staffing needs and procedures. Nonetheless, Plaintiff does not allege that he *ever* communicated a desire for *any* gaffer role—either in advance of this Commercial or any other production. Without such notice, he has not plausibly alleged that any Defendant (much less the Non-Employer Defendants) "denied" him a gaffer role at all. *See Brokamp*, 66 F.4th at 387 ("no … injury until there is a denial" of an applied-for job).

Plaintiff tries to get around this failure by attaching an email that suggests that the non-DTL gaffer role was filled at the time Plaintiff was offered the Best Boy position, such that he

4

could not have "informally" applied for it. Opp. at 8 n.3; Dkt. 45-1. But even if the unpled email were properly before this Court (it is not), *see Perez v. Escobar Constr., Inc.*, No. 20-CV-8010-LTS-GWG, 2023 WL 5387541, at *7 n.6 (S.D.N.Y. Aug. 22, 2023), *appeal filed*, No. 23-1240 (2d. Cir. Sept. 7, 2023) (facts may not be added for the first time in opposition briefs), it does not establish futility as it does not speak to what Plaintiff could have told Something Ideal—much less the Non-Employer Defendants, who had no involvement in staffing—*before* this particular vacancy was filled. There was nothing preventing Plaintiff, who acknowledges that he had an ongoing relationship with Something Ideal and knew Something Ideal would need to staff gaffers, from expressing his interest in a gaffer position earlier.

Plaintiff also relies on the exception to the application requirement outlined in *Petrosino*, which states that a plaintiff may be excused from the application requirement where "(1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures." 385 F.3d at 227; *see* Opp. at 16. But this exception does not apply to failure-to-hire cases. *See* Mot. at 16-17 (citing *Rich v. Associated Brands Inc.*, 559 F. App'x 67, 68 (2d Cir. 2014)). And even if it did, it would not apply here because Plaintiff knew of the non-DTL gaffer role and "did not seek" it. Opp. at 8. To excuse Plaintiff from the application requirement would allow him to seek relief for not being hired for a job he never asked for and Defendants had no reason to know he wanted. That is exactly what the application requirement is supposed to avoid: contrary to Plaintiff's suggestion, Opp. at 18, one cannot be "denied" a job one did not apply for. *See Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998) (declining to require employers to "consider each [employee] for any opening for which they are qualified but did not specifically apply"). Plaintiff cannot establish standing by secretly hoping to be hired as a gaffer, without ever telling anyone.

5

Plaintiff argues that the Court should disregard the fact that he could have applied for the non-DTL gaffer role, because he is "not alleging discrimination in hiring for that role." Opp. at 8. But Plaintiff alleges that the roles are paid the same. *See* FAC ¶ 32 (line item is "duplicated"). And according to Plaintiff, the DTL Program has no added benefits because, in Plaintiff's view, it does not operate as an "apprenticeship" or "training" program. *Id.* ¶¶ 93-94. Thus, Plaintiff cannot allege that he was injured by being deprived of access to a DTL gaffer position that Plaintiff describes as equivalent to the non-DTL gaffer position, for which he could have applied.

Implicitly conceding the contrived nature of his alleged injuries, Plaintiff likens his case to "tester" cases, where the Supreme Court has held that a manufactured injury may suffice for standing. Opp. at 6-7 (citing *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 297 (2022), *Evers v. Dwyer*, 358 U.S. 202, 204 (1958), and *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982)). But that analogy fails. Those cases did not involve a Section 1981 employment claim, and each appellate court to address the issue has held that there is no Section 1981 "tester" standing. *See, e.g.*, *Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 304 (7th Cir. 2000); *Fair Emp. Council of Greater Wash., Inc. v. BMC Mktg. Corp.*, 28 F.3d 1268, 1271-72 (D.C. Cir. 1994). The cases are also distinguishable because each plaintiff took some action to trigger their own injury. *See Cruz*, 596 U.S. at 296-97 (plaintiff "triggered the application of" a loan repayment clause); *Evers*, 358 U.S. at 204 (plaintiff boarded segregated bus); *Havens Realty*, 455 U.S. at 374 (plaintiff sought housing). By contrast here, the problem is that Plaintiff *took no action*: Because Plaintiff did not apply for either gaffer role, even informally, he did not "submit to the challenged policy" and lacks standing. *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997).

## II. PLAINTIFF'S SECTION 1981 DISCRIMINATION CLAIM FAILS.

### A. Plaintiff's Section 1981 Claim Fails For The Same Reasons He Lacks Standing.

Plaintiff's Section 1981 claim fails because he has not satisfied Section 1981's application

6

requirement and is not qualified for the DTL role.  *See* Mot. at 14-18; *supra* Section I.

### B. Plaintiff Fails to State A Claim Of Contractual Interference.

Plaintiff's Section 1981 claim also fails because he has not stated a contractual interference claim.  *See* Mot. at 11-14.  Conceding that he cannot bring a traditional employment claim against the Non-Employer Defendants, Plaintiff attempts to recast his claims as based on Section 1981's protections against third-party interference with contractual rights.  Opp. at 11-12.  But doing so requires plausibly alleging that the Non-Employer Defendants "actually had" and "exercised" "power or authority to prevent [Plaintiff] from contracting with" Something Ideal.  *Ginx, Inc. v. Soho All.*, 720 F. Supp. 2d 342, 358 (S.D.N.Y. 2010) (citation omitted).  He has not.

To start, Plaintiff does not claim that the Non-Employer Defendants were involved in hiring decisions or took steps to prevent him from applying to be a gaffer.  Instead, he alleges only that AICP created the DTL Program, and Meta and BBDO funded it.  FAC ¶¶ 21, 97-98.  But neither allegation establishes that the Non-Employer Defendants had the "power or authority to prevent" him from contracting with Something Ideal, much less that they "exercised" it.  *Ginx*, 720 F. Supp. 2d at 358.  Plaintiff's vague and conclusory allegation that "Something Ideal was required to follow the DTL program," FAC ¶ 88, does not close this gap because he does not claim that *the Non-Employer Defendants* required Something Ideal to follow the DTL program, much less the version of the program he claims injured him as an experienced hire.[2]

Plaintiff relies heavily on *Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004), but that case only underscores the deficiencies of Plaintiff's interference claim.  *See* Opp. at 12-13.  In *Oneida*, the Second Circuit required a plaintiff claiming third-party interference with his

---

[2] Plaintiff attaches a "Call Sheet" to his Opposition with Commercial staff, *see* Opp. at 16 n.5; ECF No. 45-2, but this improper extrinsic document does not save his claim. *See Perez,* 2023 WL 5387541, at *7 n.6.  Plaintiff does not allege that the Non-Employer Defendants saw the call sheet, demanded that it include a DTL gaffer, or otherwise knew the staff members' qualifications.

7

employment contract to "establish [each] defendant's *personal* involvement in the claimed violation."  375 F.3d at 229 (emphasis added).  Applying that requirement, the Court found that only two of the four defendants were proper because they had directly contributed to the alleged hostile work environment—by "subject[ing] [the plaintiff] to constant humiliation," making "racial remarks" and even "physically and verbally assault[ing]" him.  *Id.* at 228-30.  Here, Plaintiff makes no allegations of the sort.  Again, at most, Plaintiff alleges that AICP created the DTL Program and Meta and BBDO funded it, FAC ¶¶ 21, 97-98, but none of that shows "personal involvement" in Plaintiff's alleged failure to be hired as a gaffer.  *Oneida*, 375 F.3d at 229.[3]

### C. Race Is Not The But-For Cause Of Plaintiff's Failure To Be Hired As A Gaffer.

Plaintiff also fails to allege that his race was the but-for cause of his failure to be hired as a gaffer.  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1014-15, 1019 (2020).  As explained, Plaintiff was not qualified for the DTL Program and never expressed interest in any gaffer role—two non-discriminatory reasons for his failure to be hired.  *See supra* at I.A; I.B; II.A.  These "non-discriminatory reasons [] apparent from the face of the complaint" compel dismissal.  *Rubert v. King*, No. 19-CV-2781 (KMK), 2020 WL 5751513, at *7 & n.6 (S.D.N.Y. Sept. 25, 2020).  Plaintiff responds that the DTL Program's goal is to "push forward a demographic shift," FAC ¶ 33, but alleging but-for causation requires more than "merely plead[ing] that race was a motivating factor," *Iodice v. Archcare at Terence Cardinal Cooke Health Care Ctr.*, No. 20-cv-4217, 2022 WL 4124795, at *10 (S.D.N.Y. Sept. 8, 2022) (citation omitted); it requires alleging he "would not have suffered" the adverse action absent racial animus, *Comcast*, 140 S. Ct. at 1019.

---

[3] Such conclusory allegations are insufficient to state a claim. *See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1086, 1088 (2d Cir. 1993) (allegation that defendants used "race based discrimination, fraud, deception, professional misconduct and intentional conspiracy" to deprive him of the equal protection of the law was too conclusory); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir. 1988) ("naked allegation[s]" of discrimination do not suffice).

**III.     PLAINTIFF'S SECTION 1985(3) CONSPIRACY CLAIM FAILS.**

Plaintiff's Section 1985(3) claim, based on an alleged violation of Section 1981, *see* Opp. at 11, fails because (1) Plaintiff has failed to state a claim for any Section 1981 violation; and (2) Section 1985(3) claims cannot be based on Section 1981 employment discrimination claims. Plaintiff's attempt to paint his conspiracy claim as "incidental to" and distinct from an employment discrimination claim fails to avoid the inescapable force of this case law. Opp. at 5, 15.

First, it is black-letter law that "Section 1985(3) creates no substantive rights, but merely 'provides a remedy for violation of the rights it designates.'" *Jenkins v. Arcade Bldg. Maint.*, 44 F. Supp. 2d 524, 532 (S.D.N.Y. 1999) (quoting *Great Am. Fed. Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 372 (1979)). Plaintiff therefore cannot state a Section 1985(3) claim *unless* he has also stated a claim for an underlying violation: here, a Section 1981 violation. *See* Opp. at 11. Because Plaintiff has not pled a Section 1981 violation, his conspiracy claim fails. *Benzinger v. NYSARC, Inc. N.Y.C. Chapter*, 385 F. Supp. 3d 224, 236 (S.D.N.Y. 2019); *supra* at Section II.

Second, even if Plaintiff had stated a Section 1981 claim, his Section 1985(3) claim would *still* fail because Section 1985(3) claims cannot be based on claims of employment discrimination under Section 1981—as every New York court to address this issue has held. *See* Mot. at 21 (collecting cases).[4] Plaintiff argues that this Court should ignore that overwhelming consensus simply because there is no binding Second Circuit precedent. *See* Opp. at 11; SI Opp. at 13-17. But the Second Circuit has affirmed the dismissal of a Section 1985(3) claim on the ground that such claims cannot be based on a violation of Section 1981, albeit in an unpublished decision. *See Smith v. Loc. Union 28 Sheet Metal Workers*, 100 F.3d 943, *1 (2d Cir. 1996). And other appellate

---

[4] *See Tardd v. Brookhaven Nat'l Lab.*, 407 F. Supp. 2d 404, 413 (E.D.N.Y. 2006); *Foss v. Coca-Cola Enters., Inc.*, No. 07-cv-1322-JS, 2008 WL 11447999, at *4 (E.D.N.Y. Jan. 4, 2008); *Harris v. Niagara Mohawk Power Corp.*, No. 95-CV-788-FJS-GJD, 1998 WL 865566, at *6 (N.D.N.Y. Dec. 7, 1998); *Ladson v. Ulltra E. Parking Corp.*, 853 F. Supp. 699, 704 n.6 (S.D.N.Y. 1994).

courts have recognized that the "great weight of precedential authority" suggests that an alleged violation of Section 1981 cannot "form the basis of a § 1985(3) action." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 806 (3d Cir. 2001); *see Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1312 (11th Cir. 2010). Plaintiff has not pointed to a single Court of Appeals decision or New York district court opinion holding otherwise. *See* Opp. at 9-11; SI Opp. at 13-17.[5] This Court should decline Plaintiff's invitation to break with the consensus and hold otherwise based on a handful of old, out-of-circuit decisions. *See* SI Opp. at 17 n.5.

As above, Plaintiff argues that his claim against the Non-Employer Defendants is a conspiracy, not an employment, claim. Opp. at 15; SI Opp. at 15-16, 16 n.4. But this makes no difference, as "conspiracies to violate rights protected under § 1981" are likewise "insufficient to form the basis of a § 1985(3) claim." *Jimenez*, 596 F.3d at 1312 (citing *Novotny*, 442 U.S. at 378).

## IV. PLAINTIFF HAS NOT STATED A CLAIM UNDER THE NYSHRL.

Plaintiff's NYSHRL claim fails because he has not plausibly alleged that the Non-Employer Defendants "aided and abetted" employment discrimination by Something Ideal. Opp. at 22-23. Plaintiff concedes that Section 1981 and NYHRSL claims are analyzed under the same standard, Opp. at 22-23; *see* Mot. at 24-25, so this claim fails for the same reasons as above, *see supra* at Section II; *Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 122-23 (S.D.N.Y. 2022).

## CONCLUSION

The flaws in Plaintiff's claims are incurable, Mot. at 25, as confirmed by Plaintiff's failure to cure them in his amended complaint. The Court should dismiss with prejudice. *See, e.g.*, *Lunney v. City of New York*, No. 22-CV-7668 (LTS), 2023 WL 2368982, at *5 (S.D.N.Y. Mar. 6, 2023).

---

[5] *Rowe Entm't, Inc. v. William Morris Agency, Inc.*, No. 98-cv-8272, 2000 WL 896929, at *13 (S.D.N.Y. July 6, 2000) is not to the contrary because unlike here, the "plaintiffs' § 1981 claim [there] d[id] not concern employment discrimination." *Id.*; *see* Mot. at 21 n.5.

10

Dated: February 22, 2024
       Washington, D.C.

Respectfully Submitted,

**LATHAM & WATKINS LLP**

/s/ Danielle Conley
Danielle Conley
Christine C. Smith (admitted *pro hac vice*)
Jasmine D. Benjamin (admitted *pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 37-2201
Email: danielle.conley@lw.com
       christine.smith@lw.com
       jasmine.benjamin@lw.com

Melanie M. Blunschi (admitted *pro hac vice*)
Catherine A. Rizzoni (admitted *pro hac vice*)
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Tel: (415) 391-0600
Fax: (415) 395-8095
Email: melanie.blunschi@lw.com
       cat.rizzoni@lw.com

*Attorneys for Defendant Meta Platforms, Inc.*

**ELLENOFF GROSSMAN & SCHOLE LLP**

/s/ Paul P. Rooney [6]
Paul P. Rooney
Jaclyn Ruocco
Nicola Cilotta
1345 Avenue of the Americas, 11th Floor
New York, NY 10105
(212) 370-1300
prooney@egsllp.com
jruocco@egsllp.com
nciliotta@egsllp.com

*Attorneys for Defendant Association of Independent Commercial Producers, Inc.*

**DAVIS+GILBERT LLP**

/s/ Guy Cohen
Guy Cohen
Angela Dunay
1675 Broadway
New York, New York 10019
(212) 468-4853
gcohen@dglaw.com
adunay@sglaw.com

*Attorneys for Defendant BBDO Worldwide, Inc.*

---

[6] The Non-Employer Defendants' use of electronic signatures with consent is in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.